■ GREGORY M. WALSH et al., Respondents, v STATE OF NEW YORK, Appellant. [648 NYS2d 816] —Yesawich Jr., J. Appeals from two judgments of the Court of Claims (Benza, J.), entered May 24, 1995 and October 6, 1995, upon a decision of the court in favor of claimants.

Claimant Gregory M. Walsh (hereinafter claimant), an electrician since 1983, was injured in 1987 when he fell approximately 30 feet while working at the State Education Building in the City of Albany. Claimant, who was 28 years old at the time of the accident, together with his wife, derivatively, commenced suit against the State seeking damages for his injuries. Following a bifurcated trial, the Court of Claims awarded claimant $1,000,000 for past pain and suffering, $750,000 for future pain and suffering, $64,364 for past economic loss and $1,200,000 for future economic loss, for a total award of $3,014,364. In addition, claimant's wife was awarded

$60,000 for the past care of claimant and loss of services, and another $125,000 for future losses. The State appeals.

Prefatorily, it should be noted that the trial was held without a jury, and although deference must be accorded to the trial court's assessment of credibility issues, we may, nevertheless, independently consider the probative weight of the evidence and the inferences that may be drawn therefrom, and grant the judgment that we deem the facts warrant (*see, Northern Westchester Professional Park Assocs. v Town of Bedford*, 60 NY2d 492, 499; *Hoover v Durkee*, 212 AD2d 839, 841). This Court's authority, in this regard, extends to the making of appropriate damage awards (*see, Rivera v State of New York*, 205 AD2d 602, 603; *Karagiannis v New York State Thruway Auth.*, 187 AD2d 1009, 1010, *lv dismissed* 81 NY2d 835).

With respect to the portions of the award intended to compensate claimant for his past and future pain and suffering ($1,000,000 and $750,000, respectively), and the amounts awarded on the derivative claim (totaling $185,000), it is the State's contention that these sums deviate materially from awards made in other, allegedly comparable, cases. A review of past decisions, however, indicates that the sums awarded are not excessive, given the severity of claimant's injuries, as a consequence of which he was required to undergo a spinal fusion and bone graft, as well as two other operations to correct problems caused by loss of nerve function in his foot and leg (*see, e.g., Eschberger v Consolidated Rail Corp.*, 174 AD2d 983, 985, *lv denied* 79 NY2d 752, *cert denied* 503 US 1011; *Kirschhoffer v Van Dyke*, 173 AD2d 7, 10-11). Notably, the testimony adduced at trial established that claimant's fall resulted in permanent nerve damage and significant loss of function in his back and lower extremities, limb disfigurement and ongoing pain. Formerly an active young man and father of two, claimant has had to modify or curtail his own work and leisure activities, as well as his participation in the pursuits of his young children. His ability to do household chores and to care for his children has also been markedly diminished. Considering these substantial and permanent limitations on claimant's activities, the pain he has endured, and the sacrifices his wife has had to make to care for him and maintain their household, the amounts awarded are not unreasonable.

Turning to the award of $1,200,000 for future lost earnings, a review of the record reveals that this sum exceeds the amount of compensation warranted by the evidence. The rule with respect to lost earnings is that such a loss "must be established with reasonable certainty, focusing, in part, on

[claimant's] earning capacity both before and after the accident" (*Johnston v Colvin*, 145 AD2d 846, 848; *see, Kirschhoffer v Van Dyke, supra*, at 10). In accordance with this principle, the Court of Claims found, correctly, that had claimant not been injured, he would have earned approximately $2,300,000 in basic wages and fringe benefits (a figure arrived at by projecting the highest salary he had achieved, $37,640, over his predicted work-life expectancy, which according to the testimony would have continued for approximately 25 years from the date of trial, with a 5% increase per year for inflation, and 30% for fringe benefits). To this amount, however, the court added another $300,000 for overtime (bringing the total to $2,600,000), an enhancement that is not justified by the record. Although there was testimony that before the accident claimant was paid for overtime which will no longer be available to him, there was no proof as to the amount of overtime worked or the level of additional compensation he received. Consequently, the allocation of $300,000 in recompense for loss of the opportunity to perform such work is wholly speculative and unsustainable (*see, Toscarelli v Purdy*, 217 AD2d 815, 818-819; *Colezetti v Pircio*, 214 AD2d 926, 928). Elimination of this amount reduces claimant's projected earning capacity—had he not been injured—to $2,300,000.

To calculate the impact of claimant's injuries on his ability to earn, the Court of Claims found that claimant will be able to continue to work as an electrician until he attains age 45, and then, because of his injuries, will be forced to accept "some type of more sedentary employment until the end of his normal work span". The only economic expert to testify stated, however, that claimant will have full earning capacity until he reaches 41 years of age, and that thereafter he can be expected to earn just half of his former wages. These predictions, based on widely used and accepted government data, are consistent with the medical testimony, which established that the nature of claimant's injuries makes it likely that his condition will degenerate over time, further limiting his ability to work. Claimant's full earning capacity until he reaches the age of 41 (approximately $300,000), together with the reduced earnings he can expect to receive for the remainder of his work-life expectancy (approximately $1,000,000), yields a total potential earning capacity, after the accident, of approximately $1,300,000. Deducting this figure from the $2,300,000 that claimant would have earned, had he not been injured, results in a damage award of $1,000,000, representing the reduction in claimant's earning capacity that can be said, to a reasonable certainty, to have been occasioned by his injuries.

As a final matter, we perceive no basis for the State's argument that the Court of Claims improperly allowed a double recovery.

Cardona, P. J., Mikoll, Crew III and Spain, JJ., concur. Ordered that the judgments are modified, on the facts, without costs, by reducing the amount awarded to claimant Gregory M. Walsh for future economic loss to $1,000,000, and, as so modified, affirmed.