**David J. PAHUTA, Jr., Plaintiff,**

v.

**MASSEY–FERGUSON, INC., Defendant.**

**No. 91–CV–107H.**

United States District Court,
W.D. New York.

Feb. 18, 1998.

James E. Brown, Brown & Mohun, Depew, NY, for Plaintiff.

Anthony J. Colucci, III, Block & Colucci, P.C., Buffalo, NY, for Defendant.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

Plaintiff commenced this products liability action on October 4, 1990 [1] seeking damages for injuries he suffered on April 20, 1990 while operating a tractor loader with forklift attachment that was manufactured by defendant. A jury trial was held on May 5–23, 1997 before the undersigned. On May 23, 1997, the jury returned a verdict in favor of plaintiff. Entry of judgment was deferred pending counsels' stipulation on appropriate deductions from the verdict. Judgment was entered against defendant on November 17, 1997 in the amount of $2,136,239.40.

Plaintiff now moves for an order granting a new trial on damages, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure (Item 167). For the reasons that follow, plaintiff's motion is denied.

1. The action was initiated in New York State Supreme Court, and removed to federal district court on February 25, 1991.

## BACKGROUND

The jury's award of damages in this case was distributed as follows:

| | |
|---|---|
| Past Pain and Suffering | $ 650,000.00 |
| Past Medical Expenses | $ 168,293.34 |
| Past Lost Wages | $ 150,000.00 |
| Future Pain and Suffering | $ 600,000.00 |
| Future Lost Wages | $ 800,000.00 |
| Future Medical Expenses | $ 300,000.00 |
| TOTAL | $2,418,293.64 |

The award, with the exception of past medical expenses, was subject to a 10 percent reduction based on the jury's finding that plaintiff was 10 percent liable for the accident.

Plaintiff argues that the jury's award was against the weight of the evidence presented at trial. In particular, he disputes the amounts awarded for pain and suffering and for future lost wages. In addition, plaintiff claims that the sum awarded is inadequate as compared to other state court damage awards in comparable cases.

Defendant maintains that plaintiff's motion for a new trial is time barred, and that in any event, the jury's award is consistent with both the evidence presented at trial and the range of damage awards in comparable cases.

## DISCUSSION

### I. TIMELINESS.

Immediately after the jury rendered its verdict on May 23, 1997, in the presence of defendant's counsel, the plaintiff's attorney advised the court of plaintiff's desire to seek a new trial on the issue of damages based on the inadequacy of the jury's award. On November 6, 1997, prior to the entry of judgment, counsel met with the court to report on their progress in reaching agreement regarding the judgment amount. Plaintiff's counsel reiterated his intent to move for a new trial on the issue of damages. This court directed that plaintiff's motion be filed on or before December 10, 1997. Neither party objected to that schedule. The judgment, filed on November 12, 1997, concluded with the di-

rective that motions pursuant to Rules 50 and/or 59 be filed on or before December 10, 1997. The order of judgment was prepared by plaintiff's counsel in accordance with the agreement reached by the parties and this court's instructions. Again, defendant's counsel raised no objections to the filing deadline set forth in the order.

Rule 59(b) of the Federal Rules of Civil Procedure provides that "[a]ny motion for a new trial shall be filed no later than 10 days after entry of the judgment." According to defendant, this court's order allowed a period for filing motions which exceeded the 10–day limit set forth in the Federal Rules.[2] Defendant argues that this court lacked jurisdiction to enlarge the 10–day period, and that plaintiff's motion is therefore time barred.

At the outset, this court acknowledges that it cannot enlarge the 10–day time period specified by Rule 59(b). Rule 6(b) specifically provides that the court "may not extend the time for taking any action under Rule[ ] ... 59(b), ... except to the extent and under the conditions stated [therein]." No exceptions are provided in Rule 59(b).

■ Furthermore, the Second Circuit has consistently held that "the rule against the discretionary enlargement of certain time periods is 'mandatory and jurisdictional and ... cannot be circumvented regardless of excuse.'" *Meriwether v. Coughlin*, 879 F.2d 1037, 1041 (2d Cir.1989) (quoting *Lapiczak v. Zaist*, 451 F.2d 79 (2d Cir.1971)); *see also, Rodick v. City of Schenectady*, 1 F.3d 1341, 1346 (2d Cir.1993); *Tisdel v. Barber*, 968 F.Supp. 957, 962 (S.D.N.Y.1997). Thus, the court cannot consider a request for an extension of time in which to file a motion for a new trial, even if the request is received without objection. *Meriwether, supra*. at 1041 (citing *Hulson v. Atchison, Topeka & Santa Fe Ry.*, 289 F.2d 726, 728–29 (7th Cir.), *cert. denied*, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961)).

Plaintiff argues that he in fact made an oral motion for a new trial when the jury returned its verdict. In addition, plaintiff

---

**2.** The judgment order was filed on November 12, 1997, and entered on the official docket on November 17. In order to comply with the Rule 59,

plaintiff's motion should have been filed on or before December 3, 1997.

maintains that his motion qualifies for a decision on the merits under the "unique circumstances" rule articulated in *Thompson v. Immigration & Naturalization Serv.*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam).

### A. Oral Motion.

■ On May 23, 1997, after the verdict was read and the jury dismissed, the following colloquy took place:

MR. BROWN: Your Honor, given the shockingly low, terribly, horribly low verdict in this case—and I'm not familiar with federal practice, but I'll certainly look into it—it would be my intention to make a motion for a new trial on damages. I don't know if there's a time limit on that.

MR. COLLUCCI: I believe it's ten days.

THE COURT: Ten days.

MR. COLUCCI: Ten days from the entry of a judgment.

THE COURT: One thing. I want to make sure that the clerk doesn't enter judgment on this jury verdict form, because there are adjustments that need to be done.

. . . .

MR. BROWN: I would like more than ten days to make the motion, first of all.

MR. COLUCCI: It's ten days after you file the judgment.

MR. BROWN: After you file the judgment to make the motion. I'd like to take a week off, if I could, to be honest with you.

THE COURT: I appreciate that.

MR. BROWN: So if I could have additional time, if it doesn't start until the—

THE COURT: Time doesn't run until the judgment is filed.

[Discussion as to length of time needed to go over judgment figures and submit a proposal to the court.]

THE COURT: Friday the 13th—should we say June 16th? That would be the following Monday; get your proposed proposal in. If you're unable to agree, advise me of that, and then we'll set up a hearing.

. . . .

MR. BROWN: You and I will try to have a resolution on what the actual amount would be by the 16th. Is that fair?

MR. COLUCCI: That's fair enough. Take a week off and call me.

(Item 176, pp. 3–6).

In *Meriwether v. Coughlin*, 879 F.2d 1037, 1041 (2d Cir.1989), the Second Circuit concluded that counsel's statement that "I would, your Honor, like to at this time note that defendants wish to move for a judgment notwithstanding the verdict," although inartful, did constitute a motion under Rule 50(b). The court stated that "the use of subjunctive and precatory language reflected politeness, rather than any disinclination to make the motion." *Id.*

Plaintiff argues that the post-verdict colloquy above is similar to that in *Meriwether*, and that counsel's statements should therefore be construed as a motion under Rule 59(a). Upon review. I disagree. The language in the present case is much clearer than that used in *Meriwether*. Here, plaintiff's counsel spoke of the motion prospectively, expressing his intent to file at a later date in accordance with federal practice. His inquiry as to the applicable time limits and his subsequent request for an extension of time further support this view.

### B. Unique Circumstances.

■ Plaintiff also maintains that unique circumstances exist in this case and that his motion should therefore be considered timely. Plaintiff filed his motion on December 10, 1997, in accordance with this court's order. Plaintiff's counsel claims that he relied on the schedule set by the court and also on defense counsel's failure to object to the schedule either at the status conference or upon entry of the judgment order.

Reaching agreement on the judgment amount in this case was a laborious and protracted process. More than five months after the trial, on November 6, 1997, the parties finally reported to the court that they had reached agreement. They did not, however, submit a written judgment on that date. This court set a date for the filing of post trial motions in anticipation of the parties'

subsequent submission of a judgment order. From that point, the parties acted much more quickly than had heretofore been the case and the order was received on November 10, 1997. The unfortunate and inadvertent result is that when the order was entered, it established a schedule for filing Rule 59 motions which was beyond the 10–day period allowed.

Although this court did not intend to provide for an extension of the time limit specified for a motion under Rule 59, it is understandable that plaintiff's counsel may have relied on the order to his detriment, particularly in light of his unfamiliarity with federal practice and his post-verdict request for an extension of time. Some courts have held that where a judge extends the time within which to move for a new trial, albeit erroneously, and counsel relies on the court's permission to his detriment, an equitable exception exists which allows the motion to be heard. *Agola v. Hagner,* 678 F.Supp. 988 (E.D.N.Y.1987) (court would consider motion made more than ten days after judgment *where it had previously granted a request to extend time for filing all motions,* even though it had not intended to extend time for filing Rule 59 motion); *Eady v. Foerder,* 381 F.2d 980 (7th Cir.1967) (finding justifiable excuse for failure to file motion within ten days where plaintiffs relied on district court's order allowing extension of time); *Cohen v. Tenney Corp.,* 318 F.Supp. 280, 283 (S.D.N.Y.1970) (Rule 59 motion not untimely where court specifically permitted enlargement of ten day period and movant complied).

This approach is consistent with the Supreme Court's decisions in *Thompson v. INS.* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (petitioner's reliance on erroneous extension of time to file a Rule 59 motion should not prevent appeal from being heard on merits); and *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (Court of Appeals' decision that district court erred in granting extension of time reversed so that appeal could be heard on its merits).

Here, plaintiff's counsel clearly expressed an intent to move for a new trial on damages at the close of the trial. He restated his intent on November 6, 1997. At the status conference, defendant's counsel did not object to the December 10, 1997 filing date set by the court. Nor did he object when that date was memorialized in the judgment order entered on November 17, 1997. In fact, defendant's counsel did not raise the timeliness issue until he filed his papers in opposition to plaintiff's motion on December 31, 1997. At that point, plaintiff's time to file an appeal from the underlying judgment had already expired.

Application of an equitable exception is particularly appropriate in this case. To hold otherwise would result in manifest unfairness and obvious great hardship to plaintiff. If an exception is not applied, not only will plaintiff lose the opportunity to have his long-anticipated motion decided on the merits, he will also lose the right to appeal because his deadline for filing, in the absence of timely filed post-trial motion, has expired.

Accordingly, in light of the circumstances set forth, I find plaintiff's Rule 59 motion timely and turn now to the merits of the motion.

## II. ADEQUACY OF THE AWARD.

### A. *Standard of Review.*

Where a request for a new trial is made in a diversity action that is based on New York law, CPLR § 5501(c) provides the standard of review to be applied by the federal trial court. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 116 S.Ct. 2211, 2218–22, 135 L.Ed.2d 659 (1996); *Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003, 1011 (2d Cir.1995).

CPLR § 5501(c) is a substantive New York law controlling compensation awards for excessiveness or inadequacy. The statute states, in pertinent part, that:

> In reviewing a money judgment in an action in which an itemized verdict is required by rule forty-one hundred eleven of this chapter in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall de-

termine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.

The legislature, in adopting § 5501(c), sought "to curtail medical and dental malpractice and to contain 'already high malpractice premiums.'" *Gasperini, supra,* 116 S.Ct. at 2217, n. 3, 135 L.Ed.2d at 671, n. 3 (quoting Legislative Findings and Declaration, Ch. 266, 1986 N.Y. Laws 470 (McKinney)). The "deviates materially" formulation was meant to "'assure greater scrutiny of the amount of verdicts and promote greater ... fairness for similarly situated defendants throughout the State.'" *Gasperini, supra,* 116 S.Ct. at 2218, 135 L.Ed.2d at 672 (quoting Memorandum on Approving L.1986, Ch. 682, 1986 N.Y. Laws, at 3184).

█ In reaching a determination as to the adequacy of a verdict, the court must examine both the actual facts of the case, *Gasperini v. Center for Humanities, Inc.,* 972 F.Supp. 765, 769 (S.D.N.Y.1997), and other jury awards condoned by the courts of New York for similarly situated plaintiffs, *Consorti, supra,* 72 F.3d at 1012. However, other awards in similar cases, while instructive, are not binding on the court. *White v. Wal–Mart Stores, Inc.,* 921 F.Supp. 1046, 1047 (W.D.N.Y.1996) (citing *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 750 (2d Cir. 1984)). These factors are examined in detail below.

### B. *Weight of the Evidence.*

Plaintiff claims that the verdict was less than the damages that either were incurred or will be incurred, as clearly demonstrated at trial.

The record indicates that, to the contrary, the jury could properly have chosen, from the controverted and somewhat speculative proofs offered, that plaintiff's damages were limited to the sum it awarded. Additional amounts which plaintiff claims should have

been awarded could appropriately have been rejected on the grounds that the jury gave more credence to defendant's witnesses than to plaintiff's. Their verdict fell within the very broad range of recovery proposed by the experts at trial.

Although plaintiff's argument primarily focuses on the awards for pain and suffering and future lost wages, I will address each of the damage categories presented to the jury.

### 1. Medical

The amount awarded for past medical expenses, $168,293.64, was stipulated to by the parties.

█ As to future medical expenses, the jury awarded a sum of $300,000. A single witness testified on this issue at trial. Charles J. Gibson, M.D., who managed plaintiff's rehabilitation during his initial hospitalization, testified as to the average annual medical costs for a non-institutionalized patient with the type of paraplegia exhibited by plaintiff. Dr. Gibson stated that, barring the need for rehospitalization, the current average yearly medical cost is approximately $6,700 (Item 160, p. 57).

The jury found that plaintiff's life expectancy was 31 years. Therefore, they awarded plaintiff $9,677.42 annually for future medical expenses. This is substantially more than the figure given by Dr. Gibson.[3]

The only cost figure presented at trial was stated in approximate terms and based on an average nationwide cost for care, rather than on an individual assessment of plaintiff's particular needs. Accordingly, I find that the jury's award, which exceeds that amount by $92,300 over plaintiff's lifetime, is not contrary to the weight of the evidence presented at trial.[4]

---

**3.** Even had the jury relied on the statistical life expectancy tables, which anticipated that plaintiff would live an additional 46 years from the time of trial, their award would have been $6,521.74 annually—a figure only slightly less than the national average presented.

**4.** The jury was instructed to take factors such as inflation into account in making their award. Although plaintiff did not raise this issue, I note that the award, which exceeds the present value figure as calculated over plaintiff's anticipated lifetime, is in keeping with the court's instructions as well.

## 2. Pain and Suffering

■ Assigning dollar amounts to pain and suffering is an inherently subjective determination, and peculiarly within the province of the jury. *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 853–54 (2d Cir.1992) (citing *Zimmerman v. New York City Health & Hosps. Corp.*, 91 A.D.2d 290, 294–95, 458 N.Y.S.2d 552, 555–56 (1983)). Deference must be accorded the interpretation of the evidence by the jury if there is credible evidence sufficient to support that interpretation, even if other evidence exists in the record which would support a contrary conclusion. *Simone v. Crans*, 891 F.Supp. 112, 112–13 (S.D.N.Y.1994) (citing *Olszowy v.. Norton Co.*, 159 A.D.2d 884, 886, 553 N.Y.S.2d 224 (3d Dep't 1990); *Vail v. Keeler*, 166 A.D.2d 817, 818, 562 N.Y.S.2d 818 (3d Dep't 1990)).

■ Considerable testimony was presented at trial from various physicians who had treated plaintiff. That testimony is cited extensively in the parties' affidavits and briefs and there is no need to provide a lengthy recitation here.

It is clear from the record in this case that plaintiff required immediate hospitalization and surgery on his spinal column as a result of his accident. Plaintiff suffered complete and permanent paraplegia, with attendant loss of control of his bladder and bowels. He sees a specialist for pain management.

The catastrophic and permanent nature of plaintiff's injury is undisputed. However, the testimony as to the degree of pain experienced by the plaintiff and the potential for future complications was equivocal. It was reported that plaintiff experiences pain in his thighs. Plaintiff described this pain as fluctuating, on a scale of one to ten, from a one or two to ten (Proper at 14). Dr. Proper, who sees plaintiff for pain management, described the level of pain medication he prescribes for plaintiff as a "very low dose" (Proper at 62). Dr. Jackman, who performed plaintiff's surgery, described numerous potential complications typically attendant to paraplegia. He noted, however, that plaintiff has been doing fairly well regarding his overall problems (Jackman at 72). Dr. Gibson, who supervised plaintiff's rehabilita-

tion, stated that plaintiff had done reasonably well over the course of several years and described his condition as stable (Item 160, pp. 41–42).

The jurors had the opportunity to assess the testimony of numerous physicians, the plaintiff, and the plaintiff's mother, with whom he resides, as to plaintiff's pain, limitations and quality of life. I found them to be attentive throughout the trial.

In sum, I find that there is sufficient evidence in the record to support the jury's award determination. Accordingly, given the subjective nature of this issue, I defer to the jury's judgment and find that the award for pain and suffering is not contrary to the evidence presented.

## 3. Wages

■ The jury awarded plaintiff $ 150,000 in past lost wages and $ 800,000 in future lost wages. Although plaintiff claims that he is contesting the total award, his argument addresses the future lost wages only.

As to the past lost wages, it is undisputed that plaintiff was earning approximately $ 13,000 per year prior to sustaining his injuries in April of 1990. As set forth more fully below, expert testimony was given on this issue. Upon reviewing that testimony, I find that the award of $ 150,000 from the date of plaintiff's injuries to the date of trial is consistent with the evidence presented. In fact, the amount is much closer to plaintiff's calculations than defendant's.

Both parties presented expert witnesses on the issue of plaintiff's future economic loss. These experts posited wildly disparate loss calculations based on conflicting sets of assumptions.

Plaintiff's economist, Dr. Reiber, calculated plaintiff's future lost earnings at $ 3,450,000 (Item 185, pp. 37–38). In reaching this figure. Dr. Reiber assumed that plaintiff, who was working as a general laborer when he was injured, would become a union operating engineer in 1995 (Id. at 21). Dr. Reiber also assumed that plaintiff would not be able to generate any other income during his lifetime to offset his losses (Item 187, p. 32).

Finally, Dr. Reiber's figure included inflation (Item 185, p. 23).

Defendant's economist, Dr. Rossett, calculated plaintiff's total lost earnings from the age of twenty to the end of his working life at $ 548,148 (Item 162, p. 24).[5] He did not separate that figure into past and future losses. Dr. Rossett assumed that plaintiff would continue to work as a laborer (Id. at 13). He also assumed that, except for the year in which he suffered his injury, plaintiff would be capable of engaging in some form of gainful employment (Id. at 24). Dr. Rossett's figure did not include inflation (Id. at 13).

None of the doctors who testified addressed plaintiff's ability to work. Nor was there any testimony from a vocational expert as to the likelihood that a person with plaintiff's limitations would find work in the local economy. In other words, the jury was asked to weigh controverted testimony based upon speculative assumptions. In doing so, they arrived at a figure much closer to that proposed by defendant. That result alone, while disturbing to plaintiff, is not sufficient to warrant a new trial.[6] The rule with respect to lost earnings is that such a loss must be established with reasonable certainty, focusing on plaintiff's earning capacity both before and after the accident. *Walsh v. State of New York*, 232 A.D.2d 939, 940–41, 648 N.Y.S.2d 816 (3d Dep't 1996) (citations omitted).

In addition to disputing the amount of the award, plaintiff maintains that the jury erred in "adopting a work life expectancy of only 31 years" (Item 167, p. 18, n. 11). I would simply remind plaintiff that the jury did not make a determination as to plaintiff's work life expectancy. The term of 31 years was stipulated to by the parties and included in the jury instructions and verdict form as such.

For the reasons stated, I find that the jury's verdict as to past and future lost wages is not contrary to the evidence presented at trial.

## C. Comparable Cases under New York Law.

Because the standard of excessiveness or inadequacy is furnished by state law, the best guide for a federal court, if available, would be decisions of the state's courts in comparable cases indicating at what point awards materially deviate from reasonableness. *Consorti, supra*, 72 F.3d at 1013 (citing *Martell v. Boardwalk Enters., Inc.*, 748 F.2d 740, 750(2d Cir.1984)). Although several state court judgments on damages for paraplegia have been entered in the past few years, few have been reviewed under the standard set forth in § 5501(c).

The jury's award of $ 2,418,293.64 to plaintiff does not materially deviate from the range of reasonable compensation found in state court verdicts rendered prior to entry of judgment in this case. *See Grant v. Ore*, No. 29591/91, 1997 WL 636135 (New York County 1997) ($11,200,000 to 23–year–old male who suffered paraplegia in vehicular accident); *Mack v. Empire President Group, Inc.*, No. 001645/95, 1997 WL 743571 (Kings County 1997) ($759,000 to female in mid–30s who required surgery to ankle after tripping on defendant's premises, resulting in paraparesis from the waist down caused by complication of HIV); *Sanchez v. New York City Housing Authority*, 1997 WL 150778 (New York County 1977) ($5,500,000 awarded to male who suffered gunshot wound on defendant's premises, resulting in partial paralysis); *Veriguette v. City of New York*, 1997 WL 46644 (Kings County 1997) ($12,600,000 to male machine operator in mid–40s who was shot by police officer; plaintiff suffered paraplegia, required medical monitoring, specialized van, regular doctors visits and hospitalization at least one week per year); *Estate of Vargas v. Seafarer's Welfare Plan*, No. 16047/88, 1996 WL 904108 (Kings County 1996) ($1,100,000 to estate of 44–year–old laborer who suffered paralysis and speech

---

**5.** In reaching this figure, Dr. Rossett also relied on information received from another of defendant's experts, Dr. Abowd.

**6.** Defendant's figure did not include inflation, a factor the jury was told to include in their award. Again however, the total awarded exceeds defendant's figure by $ 401,852. Thus, the jury's verdict is not contrary to the court's instructions.

deficits resulting from doctor's malpractice; $500,000 awarded for pain and suffering); *Walsh v. State,* 232 A.D.2d 939, 648 N.Y.S.2d 816 (3d Dep't 1996) (28–year–old electrician who suffered significant loss of function in back and lower extremities, limb disfigurement and pain awarded $1,750,000 for pain and suffering and $1,000,000 for future economic loss); *Delgado v. North Shore Univ. Hosp.,* 1996 WL 642646 (Bronx County 1996) ($10,400,000 to 30–year–old male who suffered paraplegia from hospital's malpractice); *Bebee v. City of New York,* 231 A.D.2d 481, 647 N.Y.S.2d 95 (2d Dep't 1996) (award to 27–year–old man who suffered paraplegia from gunshot wound reduced from $22,326,-014 to $3.015,000; reduced award included $750,000 for lost earnings, $875,000 for pain and suffering and $675,000 for future medical expenses); *Taylor v. St. Joseph's Hosp. Health Center,* No. 3083/94, 1996 WL 642480 (Onondaga County) ($2,393,000 to 38–year–old professional female who suffered limited motion in leg and inability to return to work resulting from hospital's malpractice); *Rivera v. City of New York.* No. 8637/92, 1995 WL 473420 (Bronx County 1995) ($70,200 to 30–year–old female homemaker who suffered incomplete paraplegia in vehicular accident; $45,000 for pain and suffering); *Vera v. Beth Israel Med. Center,* 24767/85, 1993 WL 598889 (New York County 1993) ($3,210,000 to 35–year–old female psychiatric patient who suffered paraplegia and amputation of right leg resulting from suicide attempt; $200,000 for pain and suffering).

In both of the appellate division cases cited above, the court reduced the jury's award, finding it to be excessive. Plaintiff has not cited, nor could this court find, any comparable cases in which the jury's award was found to be inadequate. Furthermore, it is clear from reviewing the above cases that plaintiff's verdict, while certainly on the low end of the scale, falls within the range of state court awards in paraplegia cases involving young adults. In fact, the jury's awards for pain and suffering and economic loss in the present case are very close to the figures approved by New York's appellate courts in *Walsh* and *Bebee.*

For all of the reasons stated, based upon the testimony given at trial and other state court awards in comparable cases, I find that the jury's award is not inadequate. Accordingly, plaintiff's motion for a new trial on damages is denied.

### *CONCLUSION*

For the reasons set forth above, plaintiff's motion for a new trial on damages (Item 167) is DENIED.

**SO ORDERED.**