■ JOHN D. KRAFCHUK et al., as Guardians of the Person and Property of ROBERT KRAFCHUK, et al., Appellants, v STATE OF NEW YORK et al., Respondents. [672 NYS2d 962] —Mikoll, J. P. Appeal from a judgment of the Court of Claims (McNamara, J.), entered December 17, 1996, upon a decision of the court following a bifurcated trial in favor of the State on the issue of liability.

The accident giving rise to this claim occurred on the afternoon of February 17, 1991 in or about the Town of New Paltz, Ulster County, as Kathleen Krafchuk was traveling

southbound on Interstate Route 87 with her spouse, Robert Krafchuk, who was asleep in the passenger seat. At some point prior to the accident, Kathleen Krafchuk fell asleep at the wheel and, as the Krafchuk vehicle approached mile marker 78.05, it exited the travel portion of the roadway, striking the flared, anchored end of a guide rail with the right front tire. The Krafchuk vehicle then rode the guide rail for some distance before continuing over the guide rail and across a grassy area, eventually striking a tree. As a result of the collision, the Krafchuks' vehicle was destroyed and they allegedly sustained serious injuries.

Claimants, as guardians of the Krafchuks, thereafter filed a claim (twice amended) against the State and the State Thruway Authority (hereinafter collectively referred to as the State) alleging, *inter alia*, that the portion of Route 87 encompassing the accident site was negligently designed and constructed, particularly with respect to the placement of the aforementioned guide rail. The State answered and counterclaimed for contribution. Following a bifurcated trial, at which testimony was received from various expert witnesses, the Court of Claims dismissed the claim, concluding that there was no basis for imposing liability upon the State. This appeal by claimants ensued.

The crux of the parties' dispute at trial centered upon the placement of the guide rail. As originally constructed in 1953, the portion of Route 87 encompassing the accident site consisted of two southbound lanes, the most westerly of which was abutted by a paved shoulder. Beyond the paved shoulder was an embankment with a one-on-two slope, meaning that for every two feet traveled horizontally (west) there was a one-foot vertical drop. The record reveals that this embankment extended for quite some distance both north and south of mile marker 78.05 and was protected by a guide rail.

In or about 1982, a safety improvement project, referred to by the parties as the "Callanan job", made significant changes to the area beyond the paved shoulder in the vicinity of mile marker 78.05. Specifically, using material excavated from another portion of the project, a "spoil area" was created and graded to flatten the original one-on-two slope of the embankment. The record reveals that although most of the spoil area, which was approximately 456 feet in length and ranged in width from 0 feet to 84 feet, ran north of mile marker 78.05, approximately 114 feet continued south of that point. As a

result of the creation of this "traversable" area,* approximately 350 feet of guide rail was removed north of mile marker 78.05 and replaced with a new guide rail, the flared end of which was anchored at or near mile marker 78.05.

A review of the trial transcript reveals that the Court of Claims was confronted with a sharp factual dispute as to the nature and extent of the hazard posed by the embankment, the appropriate method for determining the point of need for the guide rail and whether the guide rail that was in place at the time of the Krafchuks' accident provided adequate protection. Briefly, claimants' expert, Frederick Zurmuhlen, a licensed professional engineer, testified that the portion of the embankment south of the spoil area created by the Callanan job retained its original one-on-two slope. Viewing this as a hazard having a large lateral dimension, Zurmuhlen applied the "350-foot rule" set forth in the State Department of Transportation Highway Design Manual and concluded that an additional 350 feet of guide rail was required north of mile marker 78.05. Thomas Karis and Raymond Gardeski, both of whom were licensed professional engineers testifying on behalf of the State, disputed Zurmuhlen's assessment of the hazard posed by the embankment and adopted a different methodology for determining the point of need for the guide rail. Specifically, Karis and Gardeski adopted the "15-degree rule" set forth in the aforementioned Highway Design Manual and referenced in the AASHTO guidelines and, under this analysis, determined that the guide rail anchored at mile marker 78.05 was properly situated.

While it is true that this Court, in reviewing a nonjury trial, may "independently consider the probative weight of the evidence and the inferences that may be drawn therefrom, and grant the judgment that we deem the facts warrant" (*Walsh v State of New York*, 232 AD2d 939, 940), it is equally true that due deference should be granted to the trial court's assessment of credibility issues (*see, id.*, at 940; *see also, Honig v State of New York*, 235 AD2d 779, 780). As resolution of the disputed factual issues here depended upon a thorough and thoughtful assessment of the competing testimony offered by the various experts, and given that the record as a whole supports the Court of Claims' findings, we find no basis to disturb the underlying judgment dismissing the claim. Claimants' remaining contentions have been examined and found to be lacking in merit.

---

* A "traversable slope" means "a slope a vehicle can pass through without severe damage to the vehicle or occupants".

Mercure, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is affirmed, without costs.

