■ WILLIAM D. KELEHER, Respondent, v FOX FORD OF VICTOR, INC., Appellant. [699 NYS2d 613] —Graffeo, J. Appeals (1) from an order of the Supreme Court (Lang, Jr., J.), entered September 29, 1998 in Rensselaer County, which, *inter alia*, granted plaintiff's motion to set aside a verdict in favor of defendant and granted a new trial on the issue of damages, and (2) from a judgment of said court, entered February 22, 1999 in Rensselaer County, upon a verdict rendered in favor of plaintiff on the issue of damages.

This appeal arises out of a March 1994 automobile accident

in which plaintiff was allegedly injured. After the close of proof, Supreme Court granted plaintiff's motion for a directed verdict on the issue of liability but denied motions by both parties for a directed verdict with respect to whether plaintiff sustained a "serious injury" within the meaning of Insurance Law § 5102 (d). The jury returned a verdict in favor of defendant, finding that plaintiff had not sustained a "serious injury". Plaintiff's motion to set aside the verdict pursuant to CPLR 4404 was granted on the basis that the verdict was against the weight of the evidence, and Supreme Court thereafter directed a verdict in favor of plaintiff and ordered a new trial on the issue of damages. The jury awarded plaintiff the sum of $416,000* and defendant now appeals.

A trial court may set aside a jury's verdict as against the weight of the evidence where a preponderance of the proof presented at trial weighs so heavily in favor of one party that a contrary verdict " ' "could not have been reached on any fair interpretation of the evidence" ' " (*Lolik v Big V Supermarkets*, 86 NY2d 744, 746, quoting *Moffatt v Moffatt*, 86 AD2d 864, *affd* 62 NY2d 875; *see, Grassi v Ulrich*, 87 NY2d 954). Here, plaintiff's medical expert, an orthopedic surgeon, testified that based on objective as well as subjective indications, plaintiff suffered from a chronic lumbosacral strain and he noted degenerative bulging discs at two levels. He opined that plaintiff sustained a moderate permanent disability and a loss of function in his lower back as the result of the accident, which precluded plaintiff from engaging in activities that required frequent bending and lifting motions. Furthermore, a pain management specialist diagnosed plaintiff as suffering from back pain secondary to interspinous ligament strain with possible facet syndrome.

The physical therapist who treated plaintiff three times a week for six weeks testified that plaintiff had significantly reduced flexibility and range of motion, and upon completion of the course of treatment plaintiff had experienced only minimal improvement. The orthopedist retained to perform an independent medical examination on behalf of defendant was called by plaintiff as a witness, and he confirmed that plaintiff's range of motion limitations were causally related to the motor vehicle accident. He acknowledged that plaintiff experienced chronic recurrent lumbosacral strain and opined that as a result of the accident-related injuries, plaintiff should not engage in repeti-

---

* Pursuant to Insurance Law § 5104, the verdict as to economic loss was reduced by $50,000, resulting in a judgment entered in the amount of $366,000.

tive squatting, bending, kneeling or lifting in excess of 10 to 15 pounds. Defendant's physician, therefore, found that plaintiff suffered from a permanent mild to moderate disability which restricted him to sedentary employment.

Based on the foregoing, we conclude that a preponderance of the proof presented at trial so strongly favored plaintiff's contention that he sustained an injury constituting a permanent partial impairment of a function in his lower back as a result of the accident (*see*, Insurance Law § 5102 [d]), that a verdict in favor of defendant on this issue could not have been reached upon a fair interpretation of the evidence (*see*, *Mordino v Sutch*, 256 AD2d 1062; *Rougeux v Henriksen*, 195 AD2d 742). Accordingly, Supreme Court's determination to set aside the jury verdict was proper.

Defendant next contends that the jury's awards of $56,300 for lost earnings and $65,000 for future lost earnings were not established with reasonable certainty (*see, e.g.*, *Walsh v State of New York*, 232 AD2d 939, 940-941). Plaintiff, who was out of work from 1995 through the completion of the trial in February 1999, stated that prior to the accident he was employed full time as a forklift operator earning $13.47 per hour, and at his second job as a hospital custodian his rate of compensation was $5.25 per hour. Utilizing the average earnings of a similarly educated male of the same age, plaintiff's economist calculated that plaintiff sustained a loss of $56,300 in past earnings, with $17,223 representing the value of fringe benefits and lost Social Security contributions. On the basis of government statistics pertaining to the average earnings of a high school educated male, the economist opined that plaintiff would lose $454,424 in future earnings. A specialist in vocational rehabilitation also testified that as a result of his physical disability, plaintiff could not return to his former occupation as a laborer, and that due to his limited education and skills he would experience a reduction in future earnings over the course of his working life of approximately 10% to 20%. Under these circumstances, the jury's economic loss awards were sufficiently supported by the evidence proffered by plaintiff (*see generally*, *Hackworth v WDW Dev.*, 224 AD2d 265) and the verdict shall not be disturbed.

Cardona, P. J., Peters, Spain and Carpinello, JJ., concur. Ordered that the order and judgment are affirmed, with costs.