■ FRANCIS CARDELLA, JR., et al., Respondents, v HENKE MACHINE, INC., Defendant and Third-Party Plaintiff. DEMCO CORPORATION et al., Third-Party Defendants; EBAC AGRICULTURAL EQUIPMENT CORPORATION, Doing Business as CAPITAL TRACTOR OF GREENWICH, Third-Party Defendant-Appellant. [726 NYS2d 734] —Lahtinen, J. Appeal from a judgment of the Supreme Court (Ferradino, J.), entered February 16, 2000 in Saratoga County, upon a decision of the court in favor of plaintiffs.

On April 26, 1987, while in the course of his employment with third-party defendant EBAC Agricultural Equipment Corporation, doing business as Capital Tractor of Greenwich (hereinafter Capital Tractor), plaintiff Francis Cardella, Jr. (hereinafter plaintiff) was struck in the head by the discharge chute of a wood chipping machine, suffering a three-inch scalp laceration[1] and contusions and abrasions to his shoulders. Plaintiff and his wife, derivatively, commenced this action against defendant, the manufacturer of the machine, which then commenced a third-party action against, among others, Capital Tractor. A bifurcated trial was held, with the issue of liability being decided in plaintiff's favor by a unanimous jury verdict in September 1996.[2] Thereafter, Capital Tractor assumed the defense of the damage portion of the lawsuit. The damage trial commenced in March 1998 but after jury selection, openings and one witness called by plaintiff, the parties agreed to waive a jury trial and allow Supreme Court to decide the issue of damages upon submission of deposition transcripts, video depositions, medical records, affidavits and other documentary evidence.

The record reveals that immediately after the accident, plaintiff was taken to the emergency room where the laceration was sutured and X rays of his skull were taken. The X rays were read as normal and plaintiff was discharged two hours later with instructions to use ice packs and take Tylenol for pain. Plaintiff saw James Noonan five days later to have his sutures removed at which time he complained of a head-

---

1. Although the emergency room record indicates that the laceration was three inches in one entry and six inches in another, Supreme Court made a finding of fact that plaintiff sustained a three-inch scalp laceration.

2. The jury apportioned liability 60% to defendant, 30% to Capital Tractor and 10% to third-party defendant Demco Corporation.

ache, bilateral shoulder pain, right knee pain and lightheadedness. On examination, his vital signs were normal, bruises were noted on each shoulder and the right medial shoulder blade was tender to palpation. On May 5, 1987, Noonan saw plaintiff again because of persistent headaches, occasional blurred vision and lightheadedness. On examination, his vital signs were normal, his neck and shoulder were "non tender" and his right knee exam revealed a slight tenderness. Because of the incapacitating headaches, plaintiff was referred to Seth Wharton, a neurologist, and Noonan's care of plaintiff ended.

Wharton's July 15, 1988 letter to plaintiffs' attorney notes that he first saw plaintiff on May 11, 1987. At that time plaintiff complained of being labile emotionally, concentration problems, blurry vision, forgetfulness and severe headaches. These complaints persisted and prevented him from returning to work until June 15, 1987. Wharton further noted that a CT scan and EEG did not show a correctable problem, but that he suspected that plaintiff "will continue with * * * these complaints permanently." Nevertheless, Wharton opined that "[h]e is not disabled, though he is uncomfortable and unhappy." Approximately one month later, Wharton wrote to plaintiff's workers' compensation carrier stating that plaintiff was incapable of working because of "cognitive and emotional deterioration" due to his head trauma of April 26, 1987 and suggested that a referral to a rehabilitation facility dealing in head trauma might be worthwhile. In an August 1992 note, Wharton indicated that he again saw plaintiff because of "some back complaints," stating that he had treated plaintiff for headaches until February 1990, but did not "recall hearing about any back pain" during that time. Finding no neurophysiological explanation for plaintiff's complaints of pain in his back and limbs, Wharton concluded that there was nothing he could do for this "unfortunate patient" and made no plans to see him again.

In November 1988, plaintiff saw Robert Sellig, an orthopedic surgeon, complaining of pain in the left side of the neck, some stiffness in his neck, pain in both shoulders and pain in the right knee. Sellig started plaintiff on a course of physical therapy and, by April 1989, the range of motion in plaintiff's neck was "almost normal" and the doctor indicated that plaintiff "could do light duty work from an orthopedic point of view." In July 1991, Sellig repaired a torn left medial meniscus sustained by plaintiff when he fell.

In 1989, plaintiff's continuing and increasing medical problems brought him under the care of a new internist, Carol

Burgess, as well as a group of neuropsychologists, including Maria Lifrak. In 1990, plaintiff began seeing Patricia Lillquist, a psychiatrist. During this period of time, plaintiff's complaints of back pain and spasms, cognitive dysfunction, headaches, emotional problems and his inability to cope with life increased. Although plaintiff attributes all of his problems to the subject accident, the unexpected conception and birth of a child in March 1988 created additional stress in plaintiff's life.

In September 1990, plaintiff enrolled in a vocational technical school geared to clients with head injury. The record indicates that plaintiff was discharged from that program on March 15, 1991, ready to return to work from an emotional and cognitive standpoint. Despite having employment opportunities, however, plaintiff was unable to accept employment because of his back pain and a continuation of his other complaints. Plaintiff has continued his medical care with his internist, orthopedic surgeon and physical therapist and has since been referred to and treated by a rheumatologist, a psychologist, a neurologist and another physical therapist. Diagnoses of, *inter alia*, fibromyalgia, post blunt head trauma, encephalopathy, torn medial meniscus of the left knee and organic mood disorder and depression, which plaintiff claims stem from this accident, have all surfaced in the medical reports submitted by plaintiff. The record also reveals that plaintiff suffers from epididymitis, carpal tunnel syndrome and heart disease. Other than the presence of muscle spasms located by palpation more than two years after the accident and apparently confirmed by biofeedback treatments given by his psychologist, a myriad of diagnostic medical tests conducted since 1987, including X rays, EMG, EEG, MRI and CAT scans, have revealed no objective indicia of any neurophysological injury related to this accident. Plaintiff, however, had not returned to work at the time of the damages trial.

As of December 1995, plaintiff's internist indicated that plaintiff was totally disabled because of the April 26, 1987 accident, but was unable to determine if that disability was permanent. Martin Marrizzo, plaintiff's psychologist since April 1991, opined in April 1998 that all of plaintiff's problems were related to the subject accident and declared him to be totally and permanently disabled. At the time of plaintiff's last deposition in January 1995, he testified that his days were occupied by babysitting his children, operating his ham radio, getting a good workout at a two-hour physical therapy session three times a week and performing a few household chores. Plaintiff was able to and did operate a motor vehicle transporting himself to physical therapy and the grocery store.

Capital Tractor submitted the videotaped deposition of a number of medical experts including, among others, orthopedist Brian Bilfield, who in June 1995 found plaintiff suffering from a mild partial disability which would not prevent him from working, neurologist Dominic Sette-Ducatti, who in June 1995 found no causal connection between the subject accident and any of plaintiff's complaints, and psychiatrist Melvin Steinhart. Steinhart psychiatrically evaluated plaintiff six times from July 1989 to April 1995, initially finding plaintiff with an accident-related postconcussion syndrome with some elements of posttraumatic stress disorder which improved to a mild adjustment disorder with depressed mood at the time of his last evaluation. All of Capital Tractor's medical and vocational experts opined that plaintiff was capable of returning to gainful employment in the same or similar job that he had prior to April 26, 1987.

The matter was finally submitted to Supreme Court on June 19, 1998 and, on May 6, 1999, the court awarded damages to plaintiffs as follows:

Plaintiff

| | |
|---|---|
| Past and future lost wages | $ 650,000 |
| Loss of fringe benefits | 50,000 |
| Past medical expenses | 206,000 |
| Future medical expenses | 20,000 |
| Past pain and suffering | 2,500,000 |
| Future pain and suffering | 500,000 |

Plaintiff's wife

| | |
|---|---|
| Past loss of consortium | $ 100,000 |
| Future loss of consortium | 5,000 |
| | $ 4,031,000 |

Capital Tractor appeals contending, *inter alia*, that the award of damages was excessive and otherwise unsupported by the proof.

Initially, we note that in a nonjury case, this Court's power is as broad as that of Supreme Court and we may independently consider the probative weight of the record evidence and the inferences drawn therefrom and render an award of damages we deem warranted by the facts (*see, Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492, 499; *Ligo v Gerould,* 244 AD2d 852, 853; *Walsh v State of New York,* 232 AD2d 939, 940; *Rivera v State of New York,* 205 AD2d 602, 603; *Karagiannis v New York State Thruway Auth.,*

187 AD2d 1009, 1010, *lv dismissed* 81 NY2d 835). Since the vast majority of the evidence presented at the damages trial was in documentary form,[3] the usual deference accorded the trial court's determinations of witness credibility is inapplicable here. In fact, critical evidence from plaintiff's internist and psychologist concerning the allegedly permanent and devastating effect of his injury was in the form of office notes and medical reports stipulated into evidence.

Turning first to Supreme Court's award to plaintiff for past pain and suffering, we find the award of $2,500,000 excessive. Our review of the record fails to reveal proof sufficient to establish a causal relation between the subject accident and the majority of plaintiff's complaints, including back pain, muscle spasms, fibromyalgia, left knee problems and severe head injury. Plaintiff made no complaint of back pain to the emergency room doctor on the day of the accident nor to Noonan, who removed the sutures and examined plaintiff twice within two weeks of the accident. Wharton, who first saw plaintiff about two weeks after the accident and provided the medical justification for plaintiff to leave the work force in August 1988, did not recall any complaints of back pain during his initial course of treatment, which ended in February 1990. In fact, no substantial complaints of back pain appear in any medical record until October 31, 1989. From the date of the accident until October 31, 1989, the record shows that plaintiff was able to work full time from June 15, 1987 until August 11, 1988 without complaint of back pain, and father a child. During this same period, he was also able to ride from upstate New York to Florida in a Ryder rental truck and fly home, all within a three-day span. A report by Lifrak indicates that in December 1990, plaintiff "sustained a back injury while on a home visit when he was picking up his infant from her crib," resulting in plaintiff's 10-day stay in a hospital. Notwithstanding Burgess' and Marazzo's conclusory statements contained in their reports that plaintiff's back pain, muscle spasms and fibromyalgia are causally related to the April 26, 1987 accident and result in plaintiff's total disability, we find no competent medical evidence to support such a finding (*see, e.g., Broderick v Spaeth*, 241 AD2d 898, *lv denied* 91 NY2d 805). Nor has plaintiff shown by a preponderance of the credible evidence that the severe cognitive deficits and emotional problems from which he claims he is suffering, and appear to be intertwined with plaintiff's

---

**3.** Only one witness, John Mattison, plaintiff's coemployee who was present at the time of the accident, testified before the parties stipulated to submit the issue of damages to Supreme Court for determination.

complaints of back pain and fibromyalgia, are causally related. Additionally, plaintiff's own orthopedist testified that his left knee problems were not related to the subject accident and the record is devoid of any proof connecting plaintiff's other multiple complaints to this accident.

We do find that the competent medical evidence establishes that the April 26, 1987 accident caused plaintiff to suffer a three-inch laceration to the left parietal region of his head, resulting in a permanent scar and postconcussion syndrome with some elements of posttraumatic stress disorder which improved to a mild adjustment disorder with depressed mood and is now permanent. We further find that the head trauma sustained by plaintiff was a contributing cause to plaintiff's "cognitive and emotional deterioration" that kept him out of work until March 15, 1991. The injuries sustained by plaintiff entitle him to an award of damages for pain and suffering for the period of April 26, 1987 to March 13, 1998 in the amount of $250,000. With respect to those causally related injuries that we have found to be permanent, plaintiff's mild adjustment disorder with depressed mood and three-inch scar, plaintiff is entitled to an award of damages for future pain and suffering for a period of 25 years (see, 1B NY PJI, Appendix B, Table 1 [2201]) in the amount of $100,000.

Turning to Supreme Court's improperly combined award for past and future lost wages and benefits (see, CPLR 4213), we again find the awards excessive. Plaintiffs presented the video testimony of James Lambrinos, who calculated plaintiff's past lost earnings and fringe benefits at $257,583 and plaintiff's future loss at $589,747. While we have no argument with Lambrinos' methodology in arriving at these figures, we find that Lambrinos' assumption that plaintiff was and is totally and permanently disabled from March 15, 1991 unsupported by the evidence. We do find sufficient proof in the record to establish plaintiff's weekly earnings at $550 as of the date of his injury. Additionally, plaintiff's claim that he was receiving a $2,295 annual benefit for health insurance is not challenged by Capital Tractor. Accordingly, plaintiff's total loss of weekly wages and benefits at the time of his injury can be established with reasonable certainty at $594 weekly. The April 26, 1987 accident caused plaintiff to be out of work for six weeks in 1987 and an additional 135 weeks from August 11, 1988 until March 15, 1991, a total of 141 weeks. This absence from work entitles plaintiff to an award for past lost wages and benefits in the amount of $83,754 (see, Walsh v State of New York, 232 AD2d 939, 940-941, supra).

We do not view the record evidence as supporting any award for past lost wages beyond March 15, 1991 or future lost wages or benefits. The "cognitive and emotional deterioration" responsible for plaintiff's removal from work on August 11, 1988 was resolved as of March 15, 1991 and, as pointed out above, plaintiff's further complaints of disability were not shown to be causally related to the subject accident.

Nor can we find record support for Supreme Court's award of $206,000 for past medical expenses. Although the amount of medical expenses incurred by plaintiff to March 1, 1998 was stipulated to by counsel and plaintiffs' counsel elicited testimony from some of plaintiff's treating physicians and therapists that the charges for their professional services were reasonable, the record contains no billings or other proof indicating what services comprise this amount. Since we are unable to determine from the record which medical expenses are attributable to those injuries related to the April 26, 1987 accident, we accordingly find that plaintiff has failed to sustain his burden with respect to this item of damages and disallow said claim for past medical expenses (see, Meade v Goldman, 145 App Div 509; Contri v Yellow Frgt. Sys., US Dist Ct, SD NY, Feb. 29, 1996, Peck, J.). Additionally, plaintiff has not shown by a preponderance of the evidence that any future medical care will be needed for those causally related injuries we found to be permanent and, therefore, he is not entitled to any award for future medical expenses (see, Faas v State of New York, 249 AD2d 731, 732).

With respect to the derivative claim of plaintiff's wife, inasmuch as Capital Tractor has failed to address it in its brief, we consider any objection to that portion of Supreme Court's award abandoned (see, OSJ, Inc. v Work, 273 AD2d 721, 722 n 2; Bombard v Central Hudson Gas & Elec. Co., 205 AD2d 1018, 1020, lv dismissed 84 NY2d 923) and will not disturb the $100,000 award for past loss of services, companionship and consortium for the period of April 26, 1987 until March 1998, nor the $5,000 award for future loss of services, companionship and consortium.

Crew III, J. P., Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded plaintiff Francis Cardella, Jr. damages for past and future pain and suffering, past and future lost income and benefits and past and future medical expenses; said plaintiff is awarded damages for past pain and suffering from April 26, 1987 to March 13, 1998 in the amount of $250,000, for future pain and

suffering in the amount of $100,000, and for past lost income and benefits from April 26, 1987 to March 15, 1991 in the amount of $83,754; and, as so modified, affirmed.