■ NEAL RIGGS et al., Respondents, v WILLIAM L. BENNING, Appellant. [736 NYS2d 474] —Peters, J. Appeal from a judgment of the Supreme Court (Demarest, J.), entered November 20, 2000 in St. Lawrence County, which, inter alia, adjudged plaintiffs to be the title owners of certain real property.

In this action commenced pursuant to RPAPL article 15, plaintiffs sought, inter alia, a declaration that they are the owners in fee simple of 14.05 acres of land situated in the Town of Russell, St. Lawrence County (hereinafter the disputed portion) which adjoin the lands of defendant and form a disputed north-south boundary line between the parties' respective premises. Defendant acquired his property in 1974 by deed from Hubert Carpenter who acquired the property in 1965 from Michael Warren. Plaintiff H.D. Lodge acquired its property in 1992 pursuant to a three-year land contract with plaintiff Mark Brackett and his wife who acquired their interest in 1980 by deed from Herbert Hatch and Dinah Hatch. Asserted as affirmative defenses in this action were the doctrines of adverse possession and practical location. After a trial, it was determined that plaintiffs had title to the disputed portion. A judgment was thereafter entered, prompting this appeal.

In this nonjury case, we independently review the weight of the evidence presented and grant judgment warranted by the record (*see, Burton v State of New York*, 283 AD2d 875, 877; *Osland v Supnick*, 202 AD2d 712, *lv denied* 83 NY2d 758), giving due deference to the trial court's determinations regarding witness credibility (*see, Burton v State of New York, supra,* at 877; *compare, Cardella v Henke Mach.*, 283 AD2d 894, 898). Upon such review, we find no basis upon which we would reverse the determination rendered.*

More than 70 years ago, we articulated the requirements of the doctrine of practical location as well as its derivation. "[It] was originally derived from a long acquiescence by the parties in a line known and understood between them * * *. [T]o be effectual, [it] 'must be an act of the parties, either express or implied; and it must be mutual, so that both parties are equally affected by it. It must be definitely and equally known, understood and settled.' * * * Where land is unimproved and uncultivated, the mere running of a line through the woods, *ex parte*, by one of the owners, so long as such line is not settled upon and mutually adopted by the adjoining owners as a division line, is an immaterial fact. In such a case, until the adjoining owner shows his assent to it, it would amount to a mere expression of the individual opinion of the owner who ran the line" (*Adams v Warner*, 209 App Div 394, 397, quoting *Hubbell v McCulloch*, 47 Barb 287, 299). Here, plaintiffs demonstrated that they possessed title to the whole of the property claimed, including the disputed portion, as outlined in their deed and

---

* Defendants have abandoned their claim seeking the application of the doctrine of adverse possession.

the survey prepared by a licensed surveyor. Defendant contended that when he purchased his property, a line of trees marked with paint delineated what he believed to be the boundary line between their respective parcels. Throughout the years, defendant re-marked those trees and posted signs, and for more than 20 years, he and others observed that line as the boundary line between the parties' properties. In support, he offered the testimony of Neil Sheridan, a neighboring landowner and relative of Warren, defendant's predecessor-in-interest. Sheridan testified that in the 1960s, he and others cut a six-foot-wide path through the woods between the parties' properties and marked trees along that path with paint so that he could hunt on the disputed portion. According to Sheridan, the line that he cut and painted is consistent with the line subsequently marked by defendant.

Brackett acknowledged that when he purchased the property, he observed a faintly painted line along the disputed border but stated that it was not straight and was "hard to follow." He further observed occasional postings on trees bearing the name "H. Carpenter," testifying that along the entire 2,500-foot border, there were less than a dozen signs. This lack of definitive markings was confirmed by other witness testimony.

Notwithstanding efforts made by Brackett in 1995 and thereafter to amicably settle the boundary line, including a February 1999 letter sent by Brackett to defendant which defendant sought to use at trial to demonstrate plaintiffs' acquiescence in defendant's ownership of the disputed portion, the testimony failed, in our view, to establish that the border was sufficiently known, understood and settled among the parties and their predecessors-in-interest to have been established by practical location (*cf., Fisher v MacVean*, 25 AD2d 575). With the success of such theory premised upon a "long standing acquiescence in the * * * boundary lines as the dividing boundary between the two [properties] * * * notwithstanding any survey determination" (*Konchar v Leichtman*, 35 AD2d 890, 890), we agree that the deeds and the confirmatory survey should control (*see, Lewis v Berleue*, 48 AD2d 716).

Cardona, P.J., Spain, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, with costs.