■ ANTHONY POLI et al., Respondents, v JOSE LEMA, Individually and Doing Business as JOSE LEMA & SONS, Appellant. (Action No. 1.) MAPLEWOOD AUTO SERVICE CENTER, INC., Respondent, v JOSE LEMA, Individually and Doing Business as JOSE LEMA & SONS, Appellant. (Action No. 2.) [806 NYS2d 735]—

Carpinello, J. Appeals (1) from a judgment of the Supreme Court (Clemente, J.), entered May 24, 2004 in Sullivan County, upon a decision of the court in favor of plaintiffs in action No. 1, and (2) from a judgment of said court, entered May 24, 2004 in Sullivan County, upon a decision of the court in favor of plaintiff in action No. 2.

In the fall of 1996, defendant performed paving services for plaintiffs in these actions, pursuant to oral agreements with

plaintiff Anthony Poli. Specifically, defendant was paid $14,000 to repair and repave the driveway and parking areas of Poli's business (a service station and auto parts store) and was thereafter paid an additional $6,000 to repave the driveway at his home.

The pavement at both jobs, however, began to deteriorate within a short period of time and attempts to have defendant remedy the problems proved fruitless. Poli ultimately hired another paving contractor to correct the problems at both locations. These separate actions sounding in breach of contract ensued. Following a nonjury trial, plaintiffs were awarded two judgments totaling $15,700, plus interest. Defendant appeals.

Contrary to defendant's contentions, the causes of action for both paving jobs sound in breach of contract, as opposed to negligence, and were therefore timely commenced (*see* CPLR 213 [2]; *see e.g. Lino Del Zotto & Son Bldrs. v Colombe*, 216 AD2d 778 [1995]). Moreover, the material terms of both paving jobs were sufficiently specific to enforce each contract and we find no basis upon which to disturb either judgment in plaintiffs' favor.

According to Poli's testimony at trial, he hired defendant to do the blacktop repair job at the service station some time after Labor Day in 1996. According to Poli, he discussed the issue of water with defendant and was told that the driveway would have to be cut down and pitched properly to address it. Indeed, according to Poli, defendant guaranteed him that a proper pitch in the driveway would take care of any drainage problems. Poli was assured that the job would be "beautiful" without any need for underground drainage.

Within one month, however, Poli observed "movement in the blacktop" which he described as a "sponginess" that shifted under the weight of vehicles. According to Poli, he contacted defendant and they agreed to wait until the following spring to see "[i]f anything need[ed] to be done [to] make it right." Indeed, that following spring, the entire area that had been resurfaced was coming apart. According to Poli, the blacktop was either cracked or fully apart and huge potholes were present. Although defendant made repeated assurances that he would "take care of it," he never did. Notably, defendant admitted at trial that he and Poli had an oral agreement to do the paving job, that he was paid for it and that he was told about the problems with it (although he claimed that he was not told about them until at least a year later). His defense, in essence, was that he was not paid to do drainage work at this job.

With respect to the paving job done at Poli's residence,

testimony at trial established that defendant agreed to repave Poli's residential driveway after completion of the work at the service station. According to Poli, defendant recommended that this driveway be leveled, graded and properly pitched before being resurfaced. He agreed to put in proper drainage so that "it would be perfect." The following spring, Poli noticed problems with this job as well, namely, grass was growing through the blacktop, the edges of the driveway were cracking, the driveway was sinking and uneven in spots, puddles were forming and it was "[c]racking all over the place." Although defendant was also told of these problems, he never rectified this situation either. The paving contractor hired by Poli to redo both jobs testified at trial that neither job was performed properly by defendant.

In reviewing a decision following a nonjury trial, this Court is empowered to " 'independently review the weight of the evidence presented and grant judgment warranted by the record, giving due deference to the trial court's determinations regarding witness credibility' " (*Danka Off. Imaging Co. v General Bus. Supply,* 303 AD2d 883, 884 [2003], quoting *Riggs v Benning,* 290 AD2d 716, 717 [2002]). Here, Supreme Court's findings that defendant breached the oral agreements was based largely on a determination of witness credibility (*see Danka Off. Imaging Co. v General Bus. Supply, supra* at 884).* Our review of the record discloses no basis to disturb these findings (*see e.g. Dzek v Desco Vitroglaze of Schenectady,* 285 AD2d 926 [2001]; *Greenwich Concrete Prods. v McCaffrey,* 81 AD2d 977 [1981], *appeal dismissed* 55 NY2d 700 [1981]). Accordingly, both judgments are affirmed.

Defendant's remaining contentions have been reviewed and rejected.

Crew III, J.P., Peters and Spain, JJ., concur. Ordered that the judgments are affirmed, with costs.

---

* Indeed, in rendering its decision, Supreme Court essentially credited the testimony of the contractor hired to redo both jobs and found defendant's testimony to be "pretty incredible."