Daniel DWYER, Plaintiff,

v.

**DEUTSCHE LUFTHANSA, AG, and Quantem Aviation Services, Inc., Defendants.**

No. 04–CV–3184 (ADS)(AKT).

United States District Court, E.D. New York.

Feb. 24, 2010.

Law Offices of Daniel M. Tanenbaum, by Daniel M. Tanenbaum, Esq., Of Counsel, Great Neck, NY, for the Plaintiff.

Chalos & Co., P.C., by George M. Chalos, Esq., Of Counsel, Oyster Bay, NY, for Defendants Deutsche Lufthansa, AG and Quantem Aviation Services, Inc.

SPATT, District Judge.

Daniel Dwyer ("Dwyer") brought this diversity action against Deutsche Lufthansa, AG and Quantem Aviation Services, Inc. (collectively "the Defendants") seeking compensatory damages for personal injuries he sustained when the tractor-trailer he was driving crashed into a guardrail. Following a two-week trial, a jury returned a verdict in Dwyer's favor, awarding him: (1) $2 million for past pain and suffering; (2) $3 million for future pain and suffering; (3) $90,980 for lost earnings; and (4) $434,115 for loss of future earnings.

The Defendants have moved, pursuant to Federal Rule of Civil Procedure 59 ("Fed. R. Civ. P."), for an order setting aside the jury's verdict, claiming that the $5 million award for past and future pain and suffering is excessive as a matter of law. In the alternative, the Defendants request a new trial solely on the issue of damages. For the reasons that follow, the Court will grant the Defendants' motion for a new trial unless Dwyer accepts a remittitur of the award.

## I. BACKGROUND

In August of 2003, Dwyer was employed as a commercial truck driver for Century Express, a New York trucking company. Lufthansa, an airline, operated a warehouse facility at the Washington–Dulles International Airport where its employees and agents loaded trucks with various goods that required transportation. On August 29, 2003, Dwyer arrived at Dulles Airport to pick up 6,500 pounds of fiber optic cable that he was scheduled to deliver to New York. Upon his arrival, Lufthansa's agents loaded the freight onto Dwyer's truck.

Dwyer testified that because he was concerned that the heavy coil was loaded on the truck in a way that would make it unstable, he requested that the truck be reloaded. After an attempt to reload the freight, a Lufthansa representative told Dwyer that he did not have the proper equipment for the job. Nevertheless, Dwyer decided to begin the trip back to New York. That evening, while driving through Maryland, Dwyer felt the coil fall over in the truck, causing the vehicle to vibrate and shake. This caused Dwyer to lose control of the truck which then crashed into a guardrail and overturned at the side of the highway. Dwyer was extricated from the truck and transported by helicopter to the University of Maryland Shock and Trauma Center in Baltimore where he was treated for his injuries.

Dwyer commenced this lawsuit on July 27, 2004, alleging that the accident resulted from the improper loading of the coil. After significant discovery and motion practice, the case was reassigned to this Court and proceeded to a jury trial on May 5, 2009. The only medical testimony presented to the jury was offered by Dwyer's treating orthopedist, Dr. Omid S. Barzideh.

Dr. Barzideh testified that the most severe injury Dwyer suffered was a fractured right femur. Tr. 691. Dr. Barzideh noted that the fracture occurred near the end of the femur at the right knee. Tr. 694. This injury required a surgery in which plates and screws were inserted into his femur. Tr. 695. Dr. Barzideh predicted that, as a result of the injury, Dwyer was likely to develop posttraumatic arthritis, a condition that would eventually require him to undergo surgical removal of the plates and screws and a total knee replacement. Tr. 712–13.

Dr. Barzideh further testified that Dwyer sustained herniations in his neck and spine. Dr. Barzideh noted that an MRI on Dwyer's left shoulder indicated he suffered anterior and posterior labral tears as well as impingement and AC joint degeneration that left him with considerable shoulder pain. Tr. 698. Dr. Barzideh also testified that Dwyer suffered from pain in his hip, Tr. 701–2, and bilateral carpal tunnel syndrome. Tr. 704–5. Dr. Barzideh described his first consultation with Dwyer as follows:

> He was complaining of pain to his left hand, his left arm, his left shoulder, his cervical spine, his lumbar spine, his thoracic spine, his right hip, right knee. He was complaining of balance problems, weakness. He was miserable.
>
> Tr. 703–4.

In addition, Dr. Barzideh testified that Dwyer was taking various prescribed narcotics in order to manage his severe pain. Tr. 707–8. Dr. Barzideh also testified that he believed Dwyer was clinically depressed. Tr. 706. According to Dr. Barzideh, Dwyer is physically incapable of gainful employment and will require extensive medication, physical therapy, and ambulatory aids for the remainder of his life. Tr. 716.

In his testimony, Dwyer explained that his injuries have left him sedentary and caused him to gain one hundred pounds. Tr. 139. Dwyer testified that he is only able to walk with a cane, Tr. 143, and that he suffers from pain in his hip, shoulder, neck, and back. Tr. 135, 137. Dwyer further testified that his injuries prevent him from leisure activities he enjoyed before the accident and more basic day to day tasks. Tr. 144.

After a two-week trial, the jury determined that the Defendants were negligent in loading Dwyer's tractor-trailer and that their negligence was a proximate cause of his accident. However, the jury also found that Dwyer's own negligence contributed to the accident and, in apportioning liability, assigned him 80% of the total fault. The jury awarded Dwyer: (1) $2 million for past pain and suffering; (2) $3 million for his future pain and suffering; (3) $90,980 for lost earnings to date; and (4) $434,115 for loss of future earnings. The Defendants now claim that the $5 million awarded for past and future pain and suffering is excessive as a matter of law.

## II. DISCUSSION

### A. Fed.R.Civ.P. 59

▮ Pursuant to Fed.R.Civ.P. 59, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party ... for any reason for which a new trial has heretofore been granted in an action at law in federal court ..." Fed.R.Civ.P. 59(a)(1)(A). In this Circuit, where a trial court finds that a jury award is excessive, it has the discretion to order a new trial on the issue of damages or, pursuant to the practice of remittitur, condition the denial of a motion for a new trial on the plaintiff's acceptance of a reduced amount in damages. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir.1998); *see Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1328 (2d Cir.1990) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984)) (explaining that remittitur " 'is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.' ").

The practice of remittitur has two laudable purposes. First, it enables "the parties to avoid the delay and expense of a new trial when a jury award is intrinsically excessive." *Earl*, 917 F.2d at 1328. Second, the practice minimizes "the extent of judicial interference with a matter that is otherwise within the jury's domain." *Id.*

However, in order to decide whether remittitur is appropriate, a trial court must determine whether the verdict is excessive. The Supreme Court teaches that a federal district court sitting in a diversity case should apply state law standards in deciding a motion challenging a jury verdict as excessive. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 437 n. 22, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). In New York, this standard is set by N.Y. C.P.L.R. § 5501(c), which provides that the state's appellate division "shall determine that an award is excessive or inadequate if it *deviates materially* from what would be reasonable compensation." (emphasis added).

In order to determine whether an award "deviates materially from what would be reasonable compensation," courts look to awards in comparable cases. The Court's exhaustive review of other New York jury verdicts in similar cases reflects that the $5 million award for past and future pain and suffering in this case is excessive as a matter of law:

*Marcoux v. Farm Service and Supplies, Inc.*, 290 F.Supp.2d 457 (S.D.N.Y.2003): The Plaintiff, a 50 year old nurse, was injured when a tractor-trailer struck the car she was driving. The Plaintiff's injuries included a fractured left femur and left distal radius affecting her wrist and right foot. As with Dwyer, the Plaintiff underwent open reduction surgery to repair her femur. The Plaintiff subsequently required a second surgery on her femur where the bone was stabilized with screws and wires. She also had surgery to prevent blood clots from traveling to her legs and to stabilize her fractured foot and wrist. Although her fractures healed properly, the Plaintiff continued to experience pain in her foot, hip and wrist. She was unable to walk without a cane and was completely unable to return to work as a nurse. A jury awarded her $800,000 for past pain and suffering and $1,000,000 for future pain and suffering. The Defendant challenged the verdict under Rule 59. After a review of awards in similar cases, the Court determined that the jury's verdict was not excessive.

*Starr v. Cambridge Green Homeowners Ass'n, Inc.*, 300 A.D.2d 779, 751 N.Y.S.2d 640 (3d Dep't 2002): The Plaintiff fell off a wet roof, fracturing his femur, an injury that required the insertion of a surgical pin. He also sustained a fractured heel, wrist, and hip. A medical expert testified that he experienced swelling and pain in his heel. He further testified that the Plaintiff was likely to require hip replacement surgery. In addition, the expert noted that he was likely to develop arthritis in his wrist. Although the Plaintiff was able to return to work, his hours were restricted and he was no longer capable of working as a roofer. A jury awarded the Plaintiff $528,000 for past pain and suffering and $750,000 for 29 years of future pain and suffering. The Appellate Division found that this award was not excessive.

*Kirby v. Turner Const. Co.*, 286 A.D.2d 618, 730 N.Y.S.2d 314 (1st Dep't 2001): The Plaintiff suffered "serious injuries" to his hip, back and spine in an accident at a construction site. Although the Court did not elaborate on the Plaintiff's injuries, it did note that he faced a lifetime of constant pain and severe limitations that would necessitate spinal fusion surgery and a total hip replacement. The trial court reduced the jury's verdict for past and future pain and suffering from $4 million to $2 million and the Appellate Division affirmed.

*Young v. Tops Markets, Inc.*, 283 A.D.2d 923, 725 N.Y.S.2d 489 (4th Dep't 2001): The Plaintiff fell from a height of 18 feet at work, sustaining injuries to his right

femur, spinal column, pelvis and right knee. A jury awarded him $1.5 million for four and one half years of past pain and suffering and $5.5 for 25 years of future pain and suffering. On appeal, the Appellate Division reduced the award to $1 million for past pain and suffering and $2.5 million for future pain and suffering.

*Carl v. Daniels,* 268 A.D.2d 395, 702 N.Y.S.2d 279 (1st Dep't 2000): A 12 year-old girl was involved in an unspecified accident in which she sustained a severe fracture of her left femur. The injury required three surgeries and was likely to require surgery in the future. The injury left her with chronic pain. A jury awarded her $4 million for past pain and suffering and $3 million for future pain and suffering. The trial court reduced her award to $1.5 million for past pain and suffering and $1 million for future pain and suffering. On appeal, the Appellate Division increased the award to $2,300,000 for past pain and suffering and $2,500,000 for future pain and suffering.

*Lind v. City of New York,* 270 A.D.2d 315, 705 N.Y.S.2d 59 (2d Dep't 2000): The Plaintiff was riding her bicycle when she was struck by a bus that knocked her underneath one of its wheels. She sustained massive crush injuries including a bilateral pubic bone pelvic fracture, laceration and avulsion of the peritoneum, fractures of the lumbar vertebrae, and fractured ribs. A jury returned a verdict awarding her $7,500,000 for past pain and suffering and $5,000,000 for future pain and suffering. On appeal, the Appellate Division indicated that it would grant the City a new trial if the Plaintiff did not accept $1.5 million for past pain and suffering and $1.25 million for future pain and suffering.

*Boshnakov v. Bd. of Educ.,* 277 A.D.2d 996, 996, 716 N.Y.S.2d 520 (4th Dep't 2000): The Plaintiff fell 20 feet from a mechanical lift, landing in the seats of an elementary school auditorium. As a result of the fall, he sustained "serious" injuries to his ankles and left knee. In light of the Plaintiff's expected life span (27 years), his "unremitting pain and the need for further surgery," the Court declined to reduce the $2 million jury award for future pain and suffering.

*Avery v. Williams,* 267 A.D.2d 264, 700 N.Y.S.2d 715 (2d Dep't 1999): The Plaintiff was a passenger in a car that was struck by an armored vehicle. The Second Department's decision does not provide any details concerning the Plaintiff's injuries. However, according to the New York Jury Verdict Reporter, Volume XVI, Issue 11, the Plaintiff sustained a fractured left femur that required open reduction surgery. The Plaintiff claimed that she suffered damage to her right knee as well. There was a dispute at trial about whether the accident caused her carpal tunnel and whether she could return to work. A jury returned a verdict awarding her $1,500,000 for past pain and suffering and $1,000,000 for future pain and suffering. On appeal, the Appellate Division reduced the award to $450,000 for past pain and suffering and $300,000 for future pain and suffering.

*Meng v. Dember, et al.,* No. 103506/95, 2000 WL 33706496 (N.Y.Sup.Ct.2000): The Plaintiff was struck by a car that drove over a curb. The Plaintiff fractured her left femur, an injury that required the insertion of a pin and a rod in her leg. She also sustained a degloving injury from the crease of her knee to the calf that left her with a marked deformity. She also suffered from peroneal nerve damage that caused drop foot and dysesthesia. A jury awarded her $1

million for past pain and suffering and $2 million for future pain and suffering.

■ The Court appreciates that "[a]ssigning dollar amounts to pain and suffering is an inherently subjective determination," and one that is "peculiarly within the province of the jury." *Marcoux*, 290 F.Supp.2d at 478 (quoting *Pahuta v. Massey–Ferguson, Inc.*, 997 F.Supp. 379, 385 (W.D.N.Y.1998)). The Court also recognizes that the facts of each case are different and there may be case-specific variables that reasonably lead a jury to award a higher or lower amount in damages. However, based on the Court's review of comparable cases, it is apparent that the jury's $5 million award for past and future pain and suffering in this case was excessive. In the Court's view, this award deviates materially from what would be reasonable compensation. In these cases, the plaintiffs sustained a range of injuries that were comparable to the injuries suffered by Dwyer and yet the award for pain and suffering in this case exceeds even the extreme high end of the damages spectrum. *See Carl*, 268 A.D.2d 395, 702 N.Y.S.2d 279 (awarding 4.8 million in pain and suffering damages to a 12 year old girl).

■ Nevertheless, the Court believes that an award of $1 million for past pain and suffering and $2 million for future pain and suffering is within the realm of reasonable verdicts for a case involving these injuries. The jury heard compelling medical testimony from Dr. Barzideh and persuasive testimony from Dwyer himself. Given the severity of Dwyer's injuries, a $3 million total award for pain and suffering would be consistent with the other approved verdicts the Court has reviewed. *See Earl*, 917 F.2d at 1330 (explaining that "a district court should remit the jury's award only to the maximum amount that

would be upheld by the district court as not excessive.").

### III. CONCLUSION

The Court has determined that the $5 million award for pain and suffering was excessive. This leaves Dwyer with a choice: he can either accept the reduced award or decide to proceed to a new trial on the sole issue of damages. Dwyer shall inform the Court in writing of his decision within 10 days of the date of this order.

Should Dwyer choose to accept this remittitur, the parties are directed to submit letters to the Court within 20 days explaining whether and to what extent the award for future pain and suffering should be discounted to reflect its present value. In the event that Dwyer elects a new trial on the issue of damages, the parties are directed to contact the Court to schedule a trial date.

**SO ORDERED.**