[895 NYS2d 580]

Daniel Morrissey et al., Appellants, v Nextel Partners, Inc., Doing Business as Nextel Partners and Another, Respondent, et al., Defendants.

Third Department, February 25, 2010

210

## APPEARANCES OF COUNSEL

*Dryer Boyajian, L.L.P.,* Albany (*James R. Peluso* of counsel), for appellants.

*Nixon Peabody, L.L.P.,* Albany (*Christopher M. Mason* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

Plaintiffs each entered into a contract with defendant Nextel Partners, Inc. (hereinafter defendant), a provider of cellular telephone service, for the purchase of a "bonus minutes" promotional rate plan with one primary phone and one or more "add-on" phones. Their subscriber agreements provided for 1,000 base minutes of monthly usage as well as 200 "bonus minutes." Plaintiffs were also required to enroll in defendant's "Spending Limit Program," which imposed a monthly fee for each phone based on their credit rating[1] and limited the total charges that they could incur each month.

Upon receiving their first month billing statement, plaintiffs discovered that they had not been credited with any bonus minutes. They contacted defendant's customer service and learned, allegedly for the first time, that the "bonus minutes" were only available for use on the primary phone, could not be shared with any add-on phones, would be applied to the primary phone only after that phone alone had exhausted the 1,000 base minutes under the plan and were only good for 12 months, and that the cost of their service plan would increase after 12 months. Plaintiff Timothy Ciarfello also discovered that his Spending Limit Program monthly maintenance fee had increased from that imposed pursuant to his contract.

---

1. Spending Limit Program customers were categorized by three credit score ratings: "Q," "L" and "T." Customers falling within the "Q" category were charged a monthly maintenance fee of $2.99 per phone, and those falling within the "L" and "T" categories were charged a $9.99 fee per phone.

Plaintiffs, individually and on behalf of all others similarly situated, commenced this action against defendant for violations of General Business Law §§ 349 and 350, as well as various principles of contract law.[2] They alleged that, although advertised as "bonus minutes," defendant's use of that term was misleading and deceptive and that defendant failed to disclose the true terms and conditions of those minutes. Plaintiffs further alleged that defendant's notification of the increased Spending Limit Program maintenance fee, which was "burie[d]" within a section of the customer's billing statement entitled "Nextel News and Notices," constitutes a deceptive practice.[3] Plaintiffs thereafter moved, pursuant to CPLR article 9, for both New York and multistate class action certification, seeking certification of two classes with each plaintiff to represent a class; plaintiff Daniel Morrissey was to represent a "Bonus Minute Class" and Ciarfello was to represent a "Spending Limit Class."[4] Supreme Court denied the motion, concluding that plaintiffs failed to demonstrate that questions of law or fact common to the entire class predominated over issues affecting individual class members and that a class action was superior to other available methods for resolving the claims. Plaintiffs now appeal.

> "To obtain class action certification, a party must establish that the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; that questions of law or fact exist that are common to the entire class and predominate over any questions that affect only individual members; that the claims or defenses of the

**2.** The complaint also named as defendants "John Does 1-100," who are alleged to be "unknown fictitious parties who are believed to be affiliates, representatives, agents or servants of defendant[ ] who are legally responsible in some manner for the harm alleged herein."

**3.** For customers who had a $2.99 monthly maintenance fee, this notice provided that the fee would be increased to $4.99. For customers who had a $9.99 monthly maintenance fee, this notice provided that the fee would be increased to $12.99.

**4.** The "Bonus Minute Class" was defined as "[a]ll persons who subscribed to [defendant's] wireless communication service plan with 'Bonus' minutes during the period June 1, 2005 to present." The "Spending Limit Class" was defined as "[a]ll persons who subscribed to [defendant's] Spending Limit Program and were billed a new monthly charge or an increase of their monthly fee for the Spending Limit Program during the period December 1, 2004 to the present." Additionally, plaintiffs sought certification of three subclasses within each of the two proposed classes.

representative plaintiffs typify those of the entire class; that the nominative plaintiffs will fairly and adequately protect the interests of the entire class; and that alternatives are not available that are superior to a class action in terms of insuring a fair and efficient adjudication of the controversy" (*Alix v Wal-Mart Stores, Inc.*, 57 AD3d 1044, 1045 [2008] [internal quotation marks and citations omitted]).

"Each requirement is an essential prerequisite to class action certification, and whether each has been established by the representative plaintiffs is a decision that 'rests within the sound discretion of the trial court' " (*id.*, quoting *Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52 [1999]; *see Brown v State of New York*, 250 AD2d 314, 320 [1998]).

Here, there is no dispute that the numerosity prerequisite has been met (*see* CPLR 901 [a] [1]). Nor do we find any basis for disturbing Supreme Court's conclusion that the claims of the representative plaintiffs are typical of the claims of the class each seeks to represent (*see* CPLR 901 [a] [3]) and that the representative plaintiffs will fairly and adequately protect the interests of the class (*see* CPLR 901 [a] [4]). As to the remaining prerequisites, we examine them in light of the elements of the causes of action asserted.

Turning first to plaintiffs' cause of action under General Business Law § 349, such a claim requires proof that defendant engaged in consumer-oriented acts or practices that are "deceptive or misleading in a material way and that plaintiff has been injured by reason thereof" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995]; *see Stutman v Chemical Bank*, 95 NY2d 24, 29 [2000]; *Baron v Pfizer, Inc.*, 42 AD3d 627, 628 [2007]). The deceptive practice, whether a representation or an omission, must be "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d at 26). Although reliance is not an element, plaintiffs must show that the "material deceptive act" caused the injury (*id.*; *see Stutman v Chemical Bank*, 95 NY2d at 29; *Baron v Pfizer, Inc.*, 42 AD3d at 628).

With respect to the "Bonus Minutes Class," plaintiffs contend that defendant failed to disclose the terms and conditions of the bonus minutes plan and that its use of the words "bonus minutes" was objectively deceptive. They allege as common to all potential class members the standard-form contract docu-

ments entered into as part of the contractual agreement with defendant, which included a "Subscriber Agreement" and "New Customer Checklist." Although the Subscriber Agreement does not define the term "bonus minutes" or otherwise set forth the terms and conditions associated with the "bonus minutes" promotion, the record makes clear that the sales process involved extensive oral representations by sales representatives and the use of in-store promotional materials relating to the terms and conditions of defendant's "bonus minutes" promotion. Each plaintiff testified that he or she participated in a lengthy discussion with the sales representative from whom they purchased cellular service, including a discussion of the "bonus minutes" promotion, and were exposed to different written promotional materials relating to the terms and conditions of defendant's "bonus minutes" promotion during the sales process. Notably, the New Customer Checklist, signed contemporaneously with the Subscriber Agreement, contains an acknowledgment by the customer that the plan being purchased had been fully explained by defendant's store representative and that he or she understands the terms of any special rate plan promotion entered into, such as the "bonus minutes" plan.[5] " '[I]t is a well-established rule of contract law that all contemporaneous instruments between the same parties relating to the same subject matter are to be read together and interpreted as forming part of one and the same transaction' " (*TBS Enters. v Grobe*, 114 AD2d 445, 446 [1985], *lv denied* 67 NY2d 602 [1986], quoting *Evans Prods. Co. v Decker*, 52 AD2d 991, 992 [1976]; *see Nau v Vulcan Rail & Constr. Co.*, 286 NY 188, 197 [1941]; *Hoffinger Indus., Inc. v Alabama Ave. Realty, Inc.*, 68 AD3d 818, 819 [2009]). Certainly, if the terms and conditions associated with the use of "bonus minutes" were fully disclosed to any given customer prior to his or her purchase, it could not be said that any such customer suffered an injury as a result of the alleged deceptive practice (*see Gale v International Bus. Machs. Corp.*, 9 AD3d 446, 447 [2004]; *Sands v Ticketmaster-N.Y., Inc.*, 207 AD2d 687, 687 [1994], *lv denied* 85

---

**5.** While the Subscriber Agreement also disclaims the existence of oral or written agreements between the parties other than those contained in that agreement, this general merger clause does not limit the inquiry in a cause of action under General Business Law § 349, since such a claim is "based on deceptive business *practices,* not on deceptive contracts" (*Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 345 [1999]; *see DeAngelis v Timberpeg E., Inc.*, 51 AD3d 1175, 1178 [2008]).

NY2d 904 [1995]; *Lewis v Hertz Corp.*, 181 AD2d 493, 494 [1992], *lv dismissed* 80 NY2d 893 [1992]).

■ Thus, the prosecution of plaintiffs' General Business Law § 349 claim would require extensive individualized inquiries into the conduct of defendant's sales representatives with respect to each individual purchaser which, in turn, would overwhelm any issues common to the class. Given the necessity of this individualized proof, Supreme Court providently exercised its discretion in concluding that common questions of law or fact do not predominate over questions affecting only individual members (*see* CPLR 901 [a] [2]; *DeFilippo v Mutual Life Ins. Co. of N.Y.*, 13 AD3d 178, 180-181 [2004], *lv dismissed* 5 NY3d 746 [2005]; *Solomon v Bell Atl. Corp.*, 9 AD3d 49, 54 [2004]; *Carnegie v H&R Block*, 269 AD2d 145, 147 [2000], *lv dismissed* 95 NY2d 844 [2000]). Furthermore, because "the necessity of conducting the above-discussed individual inquiries would render the litigation 'extremely difficult if not impossible to manage' " (*Solomon v Bell Atl. Corp.*, 9 AD3d at 56, quoting *Gordon v Ford Motor Co.*, 260 AD2d 164, 165 [1999]; *see CLC/ CFI Liquidating Trust v Bloomingdale's, Inc.*, 50 AD3d 446, 447 [2008]), Supreme Court was warranted in determining that a class action is not a superior means for resolving this claim (*see* CPLR 901 [a] [5]).[6]

We reach a different conclusion, however, with respect to the General Business Law § 349 claim of the "Spending Limit Class." Here, every customer who enrolled in the Spending Limit Program received a "Spending Limit Checklist" that incorporated the applicable monthly fee into the parties' contract based on their credit score. There is no dispute that, under the contract entered into with its customers, defendant retained the right to change the terms thereof at any time so long as advance notice was provided and that defendant, in fact, provided notice of the spending limit fee increase in the "Nextel News and Notices" section of the billing statement that plaintiffs each received. Plaintiffs allege, however, that the small typeface and inconspicuous location of the spending limit fee increase disclosures were deceptive and misleading in a material way and that they were injured by this conduct (*see Goldman v Simon Prop. Group, Inc.*, 58 AD3d 208, 213 [2008]; *Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100, 111 [2008]; *Sims v First Consumers Natl. Bank*, 303 AD2d 288, 289-290 [2003]).

---

6. For these same reasons, denial of class action certification as to plaintiffs' breach of contract claims was also proper.

■ Contrary to Supreme Court's determination with respect to this claim, we find that common questions of law and fact predominate over issues affecting only individual members (*see* CPLR 901 [a] [2]). Whether the location and typeface of the spending limit fee increase disclosure was deceptive is an issue common to all members of the proposed class, since the documents they received contained the identical notice (*see Broder v MBNA Corp.*, 281 AD2d 369, 371 [2001]; *Taylor v American Bankers Ins. Group*, 267 AD2d 178, 178 [1999]; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d 14, 21 [1991]). Further, the particular damages suffered by each class member can be easily computed (*see Broder v MBNA Corp.*, 281 AD2d at 371). While plaintiffs will be required to establish that they suffered actual injury as a result of this allegedly deceptive practice, in light of the nature and uniformity of defendant's provision of notice of the fee increase, we find that "any matters relating to individual . . . causation are relatively insignificant, if not irrelevant, and, as such, do not preclude class certification" (*Taylor v American Bankers Ins. Group*, 267 AD2d at 178; *see Makastchian v Oxford Health Plans*, 270 AD2d 25, 26 [2000]; *Pruitt v Rockefeller Ctr. Props.*, 167 AD2d at 21). We further conclude that, given the uniformity of provision of notice, a class action with respect to the General Business Law § 349 claim of the "Spending Limit Class" is superior to other potential available methods of adjudicating the controversy (*see* CPLR 901 [a] [5]).

■ Having found that plaintiffs established the prerequisites for class certification under CPLR 901, and upon our consideration of the factors listed in CPLR 902 and determination that those criteria have also been met (*see Fleming v Barnwell Nursing Home & Health Facilities*, 309 AD2d 1132, 1134 [2003]), we conclude that plaintiffs' motion for certification of a New York State class with respect to the General Business Law § 349 claim of the "Spending Limit Class" should have been granted. However, we decline to certify a multistate class as to this claim, which would include claims arising under the consumer protection statutes in as many as 31 states. General Business Law § 349 requires the deceptive transaction to have occurred in New York and, therefore, no viable claim under the statute would lie for potential class members from outside the state who were victimized by defendant's practices (*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 325 [2002]). Thus, maintenance of a multistate class action on these claims would be "unmanageable inasmuch as the trier of fact would be required to engage in the task of distilling the laws of [more

than 30] states" (*Drizin v Sprint Corp.*, 12 AD3d 245, 247 [2004]; *see* CPLR 902 [5]; *Rabouin v Metropolitan Life Ins. Co.*, 25 AD3d 349, 350-351 [2006]).

■ Lastly, plaintiffs' cause of action for false advertising under General Business Law § 350, unlike their General Business Law § 349 claim, requires proof of reliance (*see Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d 63, 72 [2006]; *Gale v International Bus. Machs. Corp.*, 9 AD3d at 447; *Small v Lorillard Tobacco Co.*, 252 AD2d 1, 8 [1998], *affd* 94 NY2d 43 [1999]). As Supreme Court correctly noted, such a claim would require individualized proof that predominates over common questions, such as whether individual class members relied upon or were even aware of the allegedly false advertisements when purchasing their cell phone plan from defendant (*see Klein v Robert's Am. Gourmet Food, Inc.*, 28 AD3d at 72; *Hazelhurst v Brita Prods. Co.*, 295 AD2d 240, 241-242 [2002]; *cf. Strauss v Long Is. Sports*, 60 AD2d 501, 507 [1978]). Indeed, the deposition testimony of each of the plaintiffs reveals that a variety of factors influenced their decision to purchase defendant's services, including defendant's "walkie-talkie" feature, word-of-mouth recommendations and convenience of store location, such that reliance will not be presumed (*see Small v Lorillard Tobacco Co.*, 252 AD2d at 8). Moreover, the record before us reveals that plaintiffs themselves were exposed to different and/or multiple versions of defendant's advertisements. Consequently, as to each member of the class, it would also be necessary to prove which particular advertisement was viewed by each individual class member (*see id.*; *Katz v NVF Co.*, 100 AD2d 470, 473 [1984]; *Ross v Amrep Corp.*, 57 AD2d 99, 103 [1977], *appeal dismissed* 42 NY2d 856, 910 [1977]). Thus, as to the claim for false advertising pursuant to General Business Law § 350, plaintiffs have not established that questions of law or fact common to the class predominate over issues affecting individual members (*see* CPLR 901 [a] [2]).

CARDONA, P.J., STEIN and GARRY, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiffs' motion for certification of a New York State class with respect to General Business Law § 349 claim of the "Spending Limit Class"; motion granted to that extent; and, as so modified, affirmed.