■ Go E. Shon, Also Known as Annie Shon, Respondent, v State of New York, Appellant. [906 NYS2d 642]—

Peters, J. Appeal from a judgment of the Court of Claims (Collins, J.), entered July 17, 2009, upon a decision of the court following a bifurcated trial partially in favor of claimant on the issue of liability.

While traveling eastbound on State Route 7 in the Town of Hoosick, Rensselaer County at approximately 2:40 A.M. on the morning of April 25, 2003, claimant encountered a "dip" and cracks in the highway, lost control of her vehicle, veered into the westbound lane and collided head-on with a State Police ve-

hicle. She thereafter commenced this action alleging that defendant's negligent maintenance of the highway was a proximate cause of the accident. Following a bifurcated trial on the issue of liability, the Court of Claims determined that, while defendant's delay in formulating and implementing a plan to eliminate the underlying cause of the pavement problem was a legitimate ordering of priorities based upon funding limitations, defendant was negligent in failing to maintain the roadway in a safe condition by making temporary repairs to the defects in the pavement's surface pending the permanent repairs, and its failure to take measures to temporarily correct the defects was a proximate cause of the accident. In concluding that claimant was partially at fault, the court credited testimony that she exceeded the actual and advisory speed limit when the accident occurred, operated her vehicle in a fatigued condition and failed to heed to warning signs alerting drivers to the dip and curve in the roadway.

Defendant's sole argument on this appeal is that the Court of Claims' determination that temporary repairs to the roadway could have been made is against the weight of the evidence. Specifically, defendant maintains that the evidence does not support the court's findings that "hot mix asphalt" was available to effectuate the repair and that "winter mix" was a feasible repair option. While this Court is vested with broad authority to independently review the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant the judgment warranted by the record in this nonjury case (see *Harjes v State of New York*, 71 AD3d 1278, 1279 [2010]; *Martin v State of New York*, 39 AD3d 905, 907 [2007], *lv denied* 9 NY3d 804 [2007]; *Lewis v State of New York*, 223 AD2d 800, 801 [1996]), "deference is still accorded to the findings of the Court of Claims where, as here, they are based largely on credibility determinations" (*Shirvanion v State of New York*, 64 AD3d 1113, 1114 [2009] [internal quotation marks and citation omitted]; *see Levine v New York State Thruway Auth.*, 52 AD3d 975, 977 [2008]; *Martin v State of New York*, 39 AD3d at 907). Upon our independent review of the record and giving due deference to the Court of Claims' assessment of witness credibility, we find no basis to disturb its findings.

The evidence at trial established that, as early as 1990, defendant was aware of a subsurface problem on the road that was attributable to the unstable adjacent hillside slope and which caused the pavement to move and crack at the site where the accident occurred. After an attempt to stabilize the slope

did not resolve the pavement problem, defendant began to plan a second, permanent subsurface repair in 1999. This project was subsequently delayed due to a major slope failure in Albany County and for fiscal reasons. In the meantime, defendant continued to layer hot mix asphalt on the road's surface at least once a year to temporarily repair the cracks and dips in the pavement. Prior to the accident, the latest such repair occurred in September 2002. Approximately one month prior to the accident, the Department of Transportation (hereinafter DOT) inspected the site, documented that the pavement was "moving significantly" and considered invoking emergency funds to repair the underlying subsurface problem. DOT continued to monitor the pavement condition and, despite indications that it was worsening—including a complaint that vehicles were "bottoming out" at the site—no repairs were made until after claimant's accident.

The Court of Claims rejected the testimony of Jan Meilhede, an engineer with DOT during the relevant time period, that it was "impossible" to get hot mix asphalt at that time of the year. Although Meilhede testified that asphalt plants only produce the hot mix during the construction season, which begins in late April, and that DOT planned on repairing the surface once the hot mix became available, there is support in this record—particularly e-mail correspondence among DOT personnel—for the court's finding that hot mix asphalt was obtainable in the weeks prior to the accident. In e-mails authored by Meilhede within three weeks of the accident, Meilhede expressly directed that hot mix asphalt be used to ameliorate the condition if it continued to worsen. Furthermore, an e-mail compiled four days prior to the accident indicates that DOT intended on layering the surface with hot mix asphalt as soon as it could get money and arrange for a paver, and that some hot mix may have been available at that time. Indeed, none of the correspondence contains any indication that attempts to obtain hot asphalt were unsuccessful or that the mix was otherwise unavailable at that time. Meilhede testified only that the asphalt is *generally* available beginning in late April, and conceded that, in prior years, DOT has made hot asphalt repairs as early as April 4. Significantly, despite Meilhede's testimony regarding the impossibility of obtaining the hot mix asphalt prior to the accident, the surface of the roadway at issue was repaved with the hot mix just five days after the accident. In addition, contrary to defendant's assertions regarding the availability of funding to effectuate the required repairs, the evidence established that emergency contract funds could be used to make temporary, short-term repairs and that asphalt could be

obtained on a promise of future payment without a specific allocation.

The Court of Claims' alternative finding that "winter mix" would have been a feasible short-term repair also finds support in the record. Notwithstanding cursory testimony from a witness that this mix was used to fill potholes, the record reveals that DOT used winter mix at the accident site in January and March 2004 to make repairs to the pavement's surface. In light of this proof, we agree that defendant could have either obtained a hot mix asphalt or used winter mix to temporarily repair the roadway. To the extent that defendant attempts to prove otherwise by citing to findings of fact in other cases regarding the availability of hot mix asphalt and/or the appropriate use of winter mix, we need only note that those factual findings are case specific, contradict the record in this case and, thus, are not suitable for judicial notice (see Dollas v Grace & Co., 225 AD2d 319, 320 [1996]; Sleasman v Sherwood, 212 AD2d 868, 870 [1995]). While defendant also invites us to take judicial notice of the standard specifications for state construction projects to reject the Court of Claims' finding that hot asphalt could have been obtained, defendant failed to present this evidence at trial, and to entertain its request now would deprive claimant of the opportunity to oppose it (see Matter of Justin EE., 153 AD2d 772, 774 [1989], lv denied 75 NY2d 704 [1990]).

Cardona, P.J., Spain, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.