■ RICHMOR AVIATION, INC., Respondent, v SPORTSFLIGHT AIR, INC., Appellant. [918 NYS2d 806]—

Stein, J.

In June 2002, defendant entered into a contract with plaintiff pursuant to which plaintiff would provide exclusive use of a single Gulfstream IV aircraft to the United States Government in transactions brokered by defendant for a term to expire on November 6, 2002. An appendix to the contract provided that defendant would guarantee 250 flight time hours within six months* "and the option to do fifty (50) hours per month thereafter." It is undisputed that the charter price was significantly lower than the market rate. Defendant continued to broker flights between the Government and plaintiff until 2005. In 2006, plaintiff submitted an invoice to defendant requesting payment for unused flight time allegedly guaranteed to it by defendant. Defendant rejected the invoice and plaintiff thereafter commenced this action for, among other things, damages.

Following discovery, Supreme Court conducted a trial, at which plaintiff's president, William Richards, and defendant's owner and sole employee, Donald Moss, were the only witnesses. Richards' testimony reflected his position that plaintiff and defendant orally agreed to extend the initial contract, with defendant guaranteeing 50 hours of referred flight time per month, while Moss' testimony supported his assertion that, after the expiration of the term of the contract in November 2002, defendant simply agreed to continue to broker flights on an "as

---

* Although the written contract was apparently not executed until June 2002, the commencement date set forth in the contract was May 6, 2002.

needed" basis, with no minimum commitment. Supreme Court ruled from the bench that defendant was contractually obligated to refer 50 hours of flight time to plaintiff each month. By subsequent written decision and order, the court determined that this obligation terminated in January 2005. Thereafter, the court issued an order and judgment awarding plaintiff more than $1 million in damages, plus interest, from which defendant now appeals.

We are unpersuaded by defendant's contention that Supreme Court's finding that the parties operated after November 2002 pursuant to the terms of the written contract was against the weight of the evidence. "In reviewing a trial court's decision rendered after a nonjury trial, this Court may independently consider the probative weight of the evidence and the inferences to be drawn therefrom and grant the judgment [it] deem[s] appropriate" (*Winkler v Kingston Hous. Auth.*, 259 AD2d 819, 823 [1999] [citations omitted]; *see Shon v State of New York*, 75 AD3d 1035, 1036 [2010]; *but see Thoreson v Penthouse Intl.*, 80 NY2d 490, 495 [1992]; *Morris v Crawford*, 304 AD2d 1018, 1020-1021 [2003]). Nevertheless, this Court generally defers to credibility determinations made by the trial court (*see Shon v State of New York*, 75 AD3d at 1036; *F&K Supply v Willowbrook Dev. Co.*, 304 AD2d 918, 920 [2003], *lv denied* 1 NY3d 502 [2003]).

Defendant contends that the weight of the evidence demonstrates that the parties did not agree to extend the written contract and that each post-2002 flight was governed by an independent agreement. An enforceable contract requires a definite agreement between two parties (*see Wild v Hayes*, 68 AD3d 1412, 1414 [2009]; *Follender v Prior*, 63 AD3d 1458, 1459 [2009]), which may be gleaned from the words and conduct of the parties (*see Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397, 399 [1977]; *Ahlstrom Mach. v Associated Airfreight*, 272 AD2d 739, 741 [2000]). Where parties continue to perform after a contract expires, the courts look to the conduct of the parties to determine whether the terms of the written contract continue to apply (*see New York Tel. Co. v Jamestown Tel. Corp.*, 282 NY 365, 372 [1940]; *Monahan v Lewis*, 51 AD3d 1308, 1309-1310 [2008]).

Here, the contract provided for a "[g]uarantee of [250] flight time hours within six (6) months and the option to do [50] hours per month thereafter." The contract is silent as to who could exercise the option or the preconditions for doing so. Richards testified that, pursuant to the written provision, Moss orally agreed to provide at least 50 hours of flight time per month after the contract's initial six-month term expired. Richards fur-

ther testified that defendant owed plaintiff approximately 81 hours of flight time on the initial six-month contract and agreed that any flight time in excess of 50 hours per month thereafter would be used to make up for the shortfall. Although Moss acknowledged that defendant was liable for any shortfall during the six-month term of the written contract, he denied any promise to provide 50 hours of flight time per month thereafter.

The parties' conduct supports Richards' testimony that they continued to operate pursuant to the terms of the written contract. For example, defendant continued to refer flights to plaintiff in substantially the same manner as under the original contract and reserved the same plane designated in that contract for essentially exclusive use by the Government. Although plaintiff sometimes chartered the plane to other clients, it did so only with the Government's permission. Likewise, Richards testified that plaintiff provided a different plane for the Government's use only at the Government's request or when the original plane was already in use or undergoing maintenance. Richards further testified that defendant continued to pay for a ground crew and staff to be on call at all times. In short, plaintiff held the aircraft aside for the Government's use at a discounted rate and neither party said or did anything that would repudiate an essential term of the written contract (*compare New York Tel. Co. v Jamestown Tel. Corp.*, 282 NY at 372).

Even if the written contract itself was not extended, this evidence that the parties continued to perform after its expiration in substantially the same manner as they had performed during the initial term of the contract supports Supreme Court's conclusion that the terms of the original contract continued to apply to the parties' subsequent agreement (*see Capital Med. Sys. v Fuji Med. Sys., U.S.A.*, 239 AD2d 743, 745 [1997]; *Watts v Columbia Artists Mgt.*, 188 AD2d 799, 801 [1992]; *compare Computerized Med. Imaging Equip. v Diasonics Ultrasound*, 303 AD2d 962, 963-964 [2003]), including the guaranteed 50-hour minimum commitment (*see Winkler v Kingston Hous. Auth.*, 259 AD2d at 823). While defendant makes a plausible argument that plaintiff's failure for more than three years to bill for unused flight time in excess of $1 million supports a contrary conclusion, Supreme Court clearly credited Richards' testimony that the delay in billing was based on the parties' agreement to calculate the unused time at the end of the contract because extra flight time in busy months would be offset against the deficit. Similarly, Supreme Court apparently gave little weight to the evidence produced by defendant of an ulterior motive for plaintiff's belated claim for compensation

and was not persuaded by defendant's argument that defendant would not have committed to a minimum number of flight time hours in the absence of a corresponding commitment from the Government. In view of the conflicting testimony and "of the trial court's superior ability to assess credibility and consequently determine the weight to be accorded the evidence, we will . . . defer to its determinations as to these matters" (*Mazzariello v Davin*, 252 AD2d 884, 885 [1998]; *see Chase Manhattan Bank v Douglas*, 61 AD3d 1135, 1137 [2009]; *Conolly v Thuillez*, 58 AD3d 973, 974 [2009]; *Krafchuk v State of New York*, 250 AD2d 962, 964 [1998]).

Defendant's various claims of evidentiary errors by Supreme Court require little discussion. None of Supreme Court's rulings amounted to an abuse of its substantial discretion (*see Salm v Moses*, 13 NY3d 816, 817-818 [2009]; *Saulpaugh v Krafte*, 5 AD3d 934, 934-935 [2004], *lv denied* 3 NY3d 610 [2004]). To the extent that any such rulings were erroneous, we are not persuaded that "the excluded evidence 'would have had a substantial influence' " on the outcome of the case (*Cramer v Englert*, 289 AD2d 617, 619 [2001], *lv denied* 98 NY2d 604 [2002], quoting *Khan v Galvin*, 206 AD2d 776, 777 [1994]; *see* CPLR 2002). Accordingly, reversal of Supreme Court's order and judgment on that basis is not warranted.

We next address defendant's arguments regarding Supreme Court's assessment of damages. Defendant's contention that plaintiff waived any claim for damages by failing to bring its action in a timely manner was not raised at trial and cannot be interposed for the first time on appeal (*see Soich v Farone*, 307 AD2d 658, 660 [2003]). We agree, however, that Supreme Court erroneously accepted plaintiff's calculation of damages based on a 50-hour obligation for each of the 32 months between May 2002 and January 2005, for a total of 1,600 hours. Inasmuch as the initial contract clearly guaranteed only 250 hours for the first six months, the evidence supports an obligation by defendant to pay for only 1,550 hours. Accordingly, despite defendant's failure to object to the initial calculation of 1,600 hours, we find it appropriate to reduce the award of damages by the amount of $245,000 (50 hours x $4,900/hour), plus any interest accrued on that amount (*see generally Walsh v State of New York*, 232 AD2d 939, 940-941 [1996]). Defendant's remaining contentions have been considered and are without merit.

Mercure, Spain and Malone Jr., JJ., concur; Cardona, P.J., not taking part. Ordered that the order and judgment is modified, on the facts, without costs, by reducing the award of damages from $1,119,650 to $874,650, plus interest thereon at the

contractual rate of 1.5% per month, and, as so modified, affirmed.