■ LASSITER PROPERTIES, INC., Appellant, v STATE OF NEW YORK, Respondent. [923 NYS2d 742]—

Spain, J.P. Appeal from an order of the Court of Claims (Siegel, J.), entered March 18, 2010, which partially granted defendant's motion for summary judgment dismissing the claim.

The underlying dispute arises from a contractual[1] reservation of timber rights as set forth in a 1925 deed, wherein Oval Wood Dish Corporation conveyed certain tracts and portions of land located in the Town of Colton, St. Lawrence County that were anticipated to be flooded by the creation of the Carry Falls Reservoir. The lands conveyed were described as those lands that would be "flooded or overflowed by creating a reservoir

1. This Court previously held that the timber rights reservation clause at issue herein is a contractual, rather than a property, interest (*Lassiter Props., Inc. v State of New York*, 22 AD3d 895 [2005]).

having a flow line at . . . [1,460] feet." The deed also expressly reserved Oval Wood Dish's right to enter the land to harvest timber then standing or lying on those premises "until such time as the lands are flooded or overflowed." In the 1950s, the Carry Falls Dam was constructed on the Raquette River, raising the maximum water level to approximately 1,385 feet. Thus, a portion of the property connected to the timber rights at issue here—the land at an elevation above 1,385 feet and below 1,460 feet—has not been flooded and consists of unimproved forest land.

Defendant is the successor in interest of the grantees of the 1925 deed and thus the fee owner of the property to which the timber rights are allegedly attached. Notwithstanding the flooding that occurred in the 1950s, in 1964 Oval Wood Dish conveyed whatever surviving timber rights that it had reserved in the 1925 deed to another entity, and claimant subsequently purchased them in 1988. In this action, claimant now seeks to enforce those alleged timber rights. Defendant moved for summary judgment and the Court of Claims partially granted the motion, finding that the contractual timber rights created in the 1925 deed terminated upon the flooding caused by the erection of the Carry Falls Dam and that those rights had not been renewed or reinstated.[2] Claimant appeals and we affirm.

Claimant's primary contention is that because the parcels to which the timber rights were associated were not entirely flooded by the creation of the reservoir in 1953, the timber rights were never extinguished. We disagree. The reservation clause expressly limited the timber rights associated with the parcels conveyed "until such time as the lands are flooded or overflowed." Nothing in this language suggests that the parcels had to be entirely submerged for the terminating event to be operable, and it is clear from the face of the deed that the parties contemplated that the right to harvest timber would end upon the creation of the reservoir. Although claimant relies heavily on the fact that the description of the parcels conveyed referenced specific elevation levels, we do not see this as creating any ambiguity in the language of the reservation clause, which clearly calls for a definitive end to the reserved timber rights upon the occurrence of a future event, here the flooding of the land caused by the creation of the Carry Falls Reservoir. Under these circumstances, we hold that the issue was properly

---

**2.** The Court of Claims did find, however, that a question of fact existed as to whether the numerous writings and memoranda between the parties could have created a new agreement as to timber rights. That holding has not been appealed.

resolved as a matter of law in accordance with the plain language of the reservation clause (*see Accurate Realty, LLC v Donadio*, 80 AD3d 1041, 1041-1042 [2011]; *Stonegate Family Holdings, Inc. v Revolutionary Trails, Inc., Boy Scouts of Am.*, 73 AD3d 1257, 1259 [2010], *lv denied* 15 NY3d 715 [2010]; *see also Lassiter Props., Inc. v State of New York*, 22 AD3d 895, 896-897 [2005]; *Decker v Hunt*, 111 App Div 821, 824-825 [1906]).

The Court of Claims also properly dismissed claimant's contention that the parties' predecessors in interest impliedly renewed or reaffirmed the terms and conditions of the 1925 timber rights subsequent to its termination. To be sure, the conduct of parties to a contract following its termination may demonstrate that they intended to create an implied contract to be governed by the terms of the expired contract, and whether there was a "meeting of the minds" required for formation of such an enforceable agreement is generally a question of fact (*Monahan v Lewis*, 51 AD3d 1308, 1309-1310 [2008]; *see Town of Webster v Village of Webster*, 280 AD2d 931, 934 [2001]). Here, however, claimant fails to present any evidence that could support such a meeting of the minds between the parties to the contract when it was terminated. Following the flooding in the 1950s, there is no evidence that the timber rights were exercised until claimant commenced logging the property in the 1990s. Although Oval Wood Dish purported to convey the timber rights in 1964, that unilateral action is insufficient to create a triable issue of fact as to whether an enforceable implied contract previously was created (*see New York Tel. Co. v Jamestown Tel. Corp.*, 282 NY 365, 372 [1940]; *Town of Webster v Village of Webster*, 280 AD2d at 934; *cf. Richmor Aviation, Inc. v Sportsflight Air, Inc.*, 82 AD3d 1423, 1424 [2011]).

Kavanagh, McCarthy and Egan Jr., JJ., concur; Lahtinen, J., not taking part. Ordered that the order is affirmed, without costs.