Stein, J.
Appeal from a judgment of the Supreme Court (Ferradino, J.), entered August 2, 2012 in Saratoga County, which declared plaintiffs’ rights under a policy of insurance issued by defendant.
In March 2003, after discovering that the floors in their home had dropped approximately four inches, plaintiffs submitted a claim on their homeowners’ insurance policy issued by defendant.[1] Defendant denied the claim, contending that the damage to the home was not a covered loss under the policy. Plaintiffs thereafter commenced this action seeking a declaration that the loss was covered under the terms of the policy. Following a nonjury trial, Supreme Court found that the damage was covered under the policy and rendered judgment in favor of plaintiffs. This appeal by defendant ensued.
We affirm. An insurance policy must be interpreted to give clear and unambiguous provisions their plain and ordinary meaning (see United States Fid. & Guar. Co. v Annunziata, 67 NY2d 229, 232 [1986]; City of Elmira v Selective Ins. Co. of N.Y., 83 AD3d 1262, 1263 [2011]; Morey v Security Mut. Ins. Co., 245 AD2d 852, 853 [1997]). However, “[t]he policy must, of course, be construed in favor of the insured, and ambiguities, if any, are to be resolved in the insured’s favor and against the insurer” (United States Fid. & Guar. Co. v Annunziata, 67 NY2d at 232; see Westview Assoc. v Guaranty Natl. Ins. Co., 95 NY2d 334, 339 [2000]; Kesick v New York Cent. Mut. Fire Ins. Co., 106 AD3d 1219, 1221 [2013]; Essex Ins. Co. v Grande Stone Quarry, LLC, 82 AD3d 1326, 1327 [2011]). The policy at issue here specifically covers “physical loss to covered property involving collapse of a building or any part of a building” (emphasis added), but only if such collapse is caused by, among other things, “hidden insect or vermin damage.” While the policy does not define what constitutes a collapse, it provides that a “[c]ollapse does not include settling, cracking, shrinking, bulging or expansion.” In this regard, we have held that the term collapse “involves an element of suddenness, a falling in, and total or near total destruction” (Weiss v Home Ins. Co., 9 AD2d 598, 599 [1959]). However, “the clear modern trend is to hold that collapse coverage provisions . . . which define collapse as not including cracking and settling — provide coverage if there is substantial impairment of the structural integrity of the building or any part of a building” (Fantis Foods, Inc. v North River Ins. Co., 332 NJ Sup 250, 259, 753 A2d 176, 182 [2000], cert denied 165 NJ 677, 762 A2d *993 658 [2000] [internal quotation marks and citations omitted]; see Royal Indent. Co. v Grunberg, 155 AD2d 187, 189 [1990]; Bailey v Hartford Fire Ins. Co., 565 F2d 826, 830 [2d Cir 1977]).
Here, the parties agree that an infestation of insects caused damage to the home’s sill plate. However, defendant disputes plaintiffs’ claims that there was a collapse of the subject building, rather than only a settling thereof, and that the insect infestation which caused the settling was hidden. At trial, plaintiff Karen Herrera testified that, in the early morning hours of March 23, 2003, she awoke to use the second floor bathroom, at which time she saw and felt that the floor was slanted downwards and had dropped approximately four inches, and that this condition had not been present before. She woke her husband, plaintiff Alex Herrera, to show him the condition of the bathroom floor and, according to their testimony, they discovered a similar drop in the floor of the hallway outside the bathroom, as well as in the first floor of the home near the bottom of the staircase. Later that morning, they also discovered that the ductwork attached to the ceiling of the basement had lowered considerably, that exposed ceiling beams on the home’s first floor contained new cracks and that there was some bowing out of the bricks around the fireplace.[2]
In addition, plaintiffs presented the testimony of their expert, Thomas Hesnor, a licensed professional engineer, who conducted a five-hour, formal inspection of plaintiffs’ home.[3] He determined that various cracks in the beams were new because they exposed the interior wood fibers, and explained that, because the weight load was coming from the roof down, the cracks in the beams of the first floor and the basement were associated with a collapse of the structural members above or a redirecting of the load. He further explained that, if the structural damage had been caused by shifting, the beams would have remained intact because, based upon their size, a shift in load would not have damaged them. Hesnor also opined that the dropping of the ductwork in the basement — and particularly the existence of a dent in the ductwork where it came into contact with a rock — indicated a collapse within the structure. Based on the Herreras’ testimony and his inspection, Hesnor concluded that *994 there was a sudden collapse that caused a substantial impairment of the structural integrity of the building on March 23, 2003. He did not observe any visible evidence of insect infestation that would have caused such impairment.
Defendant presented the testimony of its expert, David Crawford, a licensed professional engineer, who also inspected plaintiffs’ home. Although Crawford found that the damage to the sill plate resulted in a substantial impairment of the structural integrity of the building, he ultimately concluded that the damage resulted from settlement of the structure, not a collapse. Notably, Crawford also testified that the insect infestation which caused the damage to the sill plate was located inside a crawl space, which was not easily accessible, and was not visible without the aid of a flashlight.
In its decision, Supreme Court expressly noted that Hesnor’s “inspection and examination of the premises was thorough and complete” and found Hesnor’s testimony to be “most compelling” and “his version more acceptable as to what actually occurred than the testimony of . . . Crawford.” Based upon our independent review of the evidence, and according deference to Supreme Court’s credibility assessments (see Fitzpatrick v Animal Care Hosp., PLLC, 104 AD3d 1078, 1079-1080 [2013]; Richmor Aviation, Inc. v Sportsflight Air, Inc., 82 AD3d 1423, 1424 [2011]; Ash v Bollman, 80 AD3d 1115, 1117 [2011]; Shon v State of New York, 75 AD3d 1035, 1036 [2010]), we discern no basis to disturb Supreme Court’s determination that plaintiffs established that the building collapsed. While the Herreras acknowledged that no part of the floor/ceiling actually fell completely, either from the second floor onto the first floor or from the first floor into the basement, the sudden damage to plaintiffs’ home was consistent with a collapse as that term has been interpreted by this Court (see Catalanotto v Commercial Mut. Ins. Co., 256 AD2d 883, 884 [1998]; Royal Indem. Co. v Grunberg, 155 AD2d at 189; Weiss v Home Ins. Co., 9 AD2d at 599). Moreover, based upon the testimony of defendant’s own expert, we agree with Supreme Court that the insect damage was hidden.
Defendant’s remaining claim has been considered and found to be without merit.
Lahtinen, J.E, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, with one bill of costs.

. Plaintiff Rose Wangerin owns the home and plaintiffs Alex Herrera and Karen Herrera resided therein. All three were named as insureds under the policy.

. Jacks and support beams were subsequently installed in order to protect the structural integrity of the building and to prevent a total collapse. The Herreras eventually vacated the house in 2005, after discovering that a beam was within half an inch of a gas line.

. Hesnor explained that the house, which was built in the 1840s or 1850s, is post-and-beam construction. On top of the stone foundation is the sill plate, which is a seven-inch by eight-inch wooden member that is the contact point between the foundation and the building’s frame.