Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  October 16, 2014                    517699
_____

SAMUEL SAUNDERS,

                    Appellant-
                    Respondent,

          v                              MEMORANDUM AND ORDER

STATE OF NEW YORK,

                    Respondent-
                    Appellant.

_____


Calendar Date:  September 2, 2014

Before:  Lahtinen, J.P., Stein, McCarthy, Rose and Devine, JJ.

                    _____


     Law Office of Robert Dembia, PC, New York City (Robert
Dembia of counsel), for appellant-respondent.

     Eric T. Schneiderman, Attorney General, Albany (Paul
Groenwegen of counsel), for respondent-appellant.

                    _____


Devine, J.

     Cross appeals from a judgment of the Court of Claims
(DeBow, J.), entered February 7, 2013, upon a decision of the
court following a trial partially in favor of claimant.

     As he was giving inmates their cell assignments, correction
officer Kory Copeland ordered claimant to proceed to a cell
located on the second floor of the correctional facility, which
order claimant protested, asserting that he had been issued a
"flats order" that required him to remain housed on the first
floor of the facility due to certain health problems.  Claimant
continued to argue with Copeland about the cell assignment and a
physical altercation ensued, during which claimant sustained

numerous injuries, including, among other things, a fractured humerus and cheekbone, broken ribs and a heart attack, which required medical treatment at two hospitals and an extensive stay in the correctional facility's infirmary.

Claimant filed a notice of claim alleging that Copeland's excessive use of force caused serious personal injuries. Following a four-day nonjury trial, the Court of Claims concluded that Copeland's use of force was reasonable and necessary to restrain claimant, thereby eliminating any liability on the part of defendant with regard to the majority of claimant's injuries. However, the court found that claimant's fractured right humerus was "unexplained" by the use of reasonable force and rendered a partial judgment in claimant's favor as to that particular injury and awarded $80,000 in damages. Claimant now appeals, insisting, among other things, that the record establishes defendant's liability for all of his injuries and that the sum awarded by the court is inadequate. Defendant cross-appeals, asserting that, inasmuch as the Court of Claims correctly found that the force used to restrain claimant was necessary and reasonable, it erred in holding defendant liable for claimant's fractured humerus.

In our review of a verdict issued by a court following a nonjury trial, we make an independent evaluation of the weight of the evidence and, in conjunction with any reasonable inferences that may be drawn therefrom, grant an appropriate judgment (see Reynolds v State of New York, 95 AD3d 1464, 1464 [2012]; Shon v State of New York, 75 AD3d 1035, 1036 [2010]; Gonzalez v State of New York, 60 AD3d 1193, 1194 [2009], lv denied 13 NY3d 712 [2009]). Furthermore, this Court will give considerable deference to the trial court's findings of fact where "such findings are based largely upon credibility determinations" (Martin v State of New York, 39 AD3d 905, 907 [2007], lv denied 9 NY3d 804 [2007]; see Shon v State of New York, 75 AD3d at 1036). In that vein, we find that the Court of Claims' determination that the use of force to gain control over claimant was warranted and was executed in a reasonable manner has sound support in the record (see Shirvanion v State of New York, 64 AD3d 1113, 1114 [2009]; Bush v State of New York, 57 AD3d 1066, 1067 [2008]). Claimant testified that, when he informed Copeland that he had been issued a "flats order" and that he could not climb stairs,

Copeland became enraged and threatened to drag claimant up the stairs if he did not comply with his order. Claimant averred that when he failed to ascend the stairs, Copeland punched him in the face while grasping a baton, causing claimant to be "knocked out." The fracas triggered an internal security alarm and, according to claimant's testimony, he heard an "army" of correction officers descend upon him, who then kicked him "from one corner to the other corner" of the room. On cross-examination, however, claimant stated that, when he was being kicked by the officers, he remained at the base of the staircase. Claimant's trial testimony differed from his examination before trial testimony, wherein he stated that Copeland had forcefully grabbed him and attempted to drag him up the stairs and struck him after claimant refused his orders and, alternatively, that Copeland first struck him in the face and then pulled him up the stairs. Upon further cross-examination, claimant insisted that he made no attempt to resist Copeland's efforts to push or pull him up the stairs or otherwise assault him, recalling that he tried to hold onto the stairway railing and was "terrified that [he] was going to be pulled and go tumbling down the stairs" and could not recall who was pulling him on the stairs.

At trial Copeland testified that claimant refused to obey the initial order to report to his assigned cell and, after being given a second order to "lock in," claimant began to ascend the stairs and then, suddenly, grabbed the railing and kicked backward with his right leg, striking Copeland's right knee.[1] Responsively, Copeland stated that he grabbed claimant's upper back and tried to push him off the stairs and against a nearby wall, but because claimant continually resisted, they were propelled away from the wall, "did a 180" degree turn and stumbled onto the top of a desk. Copeland further recalled that claimant continued to kick and flail about and, although Copeland tried to force claimant to the floor, they were instead diverted towards a console, where claimant's face struck metal bars and

---

[1] Copeland testified that he was following claimant to his assigned cell in order to implement "keep lock status," a prison disciplinary measure that Copeland chose to apply in response to claimant's refusal to follow his initial direct order.

then, finally, claimant fell to the floor where Copeland was able to place claimant's arms into wrist restraints. Copeland denied that he or other officers struck or kicked claimant and, although he did not know if other officers observed the altercation, he later discovered that another correction officer, Robert Sweet, had heard yelling, ran to the scene and activated his alarm for assistance. Copeland indicated that, as he attempted to place claimant's arms into restraints, he had to apply a great deal of force as claimant refused to relent and continued to struggle with him. Having reviewed the evidence and deferred to the credibility determinations of the Court of Claims, we ultimately concur with that court's finding that the force used to restrain claimant was both necessary and reasonable (see Barnes v State of New York, 89 AD3d 1382, 1383 [2011], lv dismissed 19 NY3d 949 [2012]; Bush v State of New York, 57 AD3d at 1067).

We differ, however, with the Court of Claims' conclusion that claimant's fractured right humerus was the result of an excessive use of force applied after claimant was restrained and, on that basis, we now reverse that part of the court's judgment (see Green v State of New York, 71 AD3d 1310, 1311-1312 [2010]; Muller v State of New York, 240 AD2d 881, 882 [1997]). Claimant's expert, pathologist Jeffrey Hubbard, testified that claimant had sustained a comminuted fracture to the right humerus, which occurs when direct pressure is applied by an external fixed object to the bone, such as the leg of a table or, alternatively, a moving object, such as a baseball bat or being kicked, but that he would not expect the force used to place claimant's arms in wrist restraints to have caused such an injury. However, at no point during his testimony did Hubbard indicate that his review of claimant's injuries and medical records caused him to find that they were due to the use of excessive and unreasonable force (see Davis v State of New York, 203 AD2d 234, 234 [1994]). Defendant's expert, David Karandy, who was claimant's treating physician at the prison, opined that the injuries likely resulted from impact of the altercation and, further, that claimant's osteoporotic condition rendered him more susceptible to a bone fracture. Nor is there any evidence demonstrating, as the Court of Claims found, that claimant's humerus fracture occurred "after he was restrained in handcuffs." The court credited Copeland's testimony that he did not hear or

discern any fracture to claimant's arm during the altercation or while he was placing claimant into handcuffs. It also credited Hubbard's assessment that the injury was likely not the result of placing claimant's arms into restraints but, rather, that such a fracture is normally attributed to the application of external force against the bone. The court then theorized, in conjunction with video images taken from the prison infirmary in which claimant appears to be demonstrably pained while moving his right arm, that some form of impact to claimant's arm after he was handcuffed must have caused the injury. We do not find, however, that any fair interpretation of the record evidence allows for such a conclusion (see Shirvanion v State of New York, 64 AD3d at 1114; Stein v State of New York, 53 AD2d 988, 988 [1976]). Therefore, the claim against defendant must be dismissed in its entirety. In light of the instant disposition, the parties' remaining contentions have been rendered academic.

Lahtinen, J.P., Stein, McCarthy and Rose, JJ., concur.

ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted claimant's claim; claim dismissed in its entirety; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court