Harris v Reagan (2018 NY Slip Op 03408)





Harris v Reagan


2018 NY Slip Op 03408


Decided on May 10, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 10, 2018

525396

[*1]CALVIN L. HARRIS, Appellant,
v
JOSEPH C. REAGAN, Respondent.

Calendar Date: March 26, 2018

Before: McCarthy, J.P., Devine, Mulvey, Aarons and Pritzker, JJ.


Bellavia Blatt & Crossett, PC, Mineola (Steven H. Blatt of counsel), for appellant.
Harris Beach PLLC, Pittsford (Svetlana K. Ivy of counsel), for respondent.


Devine, J.

MEMORANDUM AND ORDER
Appeal from an order of the Supreme Court (O'Shea, J.), entered May 5, 2017 in Cortland County, which granted defendant's motion to dismiss the complaint.
Plaintiff, defendant and a third person owned and operated Royal Chevrolet/Cortland, Inc. and Royal Nissan, Inc., two automobile dealerships. Plaintiff was charged with murdering his wife in 2005. It was feared that automobile manufacturers would terminate the franchise status of both dealerships due to plaintiff's legal situation, and the dealership owners took steps to head off that result. These machinations included plaintiff and defendant becoming the only shareholders, with defendant having 55% and plaintiff having 45% of the shares in each dealership. A side agreement provided that, upon plaintiff's
acquittal, he would be transferred additional stock and would ultimately hold 75% of the shares in each dealership. If he were convicted, a shareholders' agreement required plaintiff to transfer his shares to a trust. Defendant would then buy the shares from the trust by making monthly payments of $15,000 for 20 years.
A jury found plaintiff guilty of murder in the second degree in 2007 and, while he was awaiting sentencing, he executed stock transfer documents. Plaintiff's shares were conveyed to defendant soon after, with defendant making the monthly payments contemplated by the shareholders' agreement. Plaintiff's legal travails then took a labyrinthine course through a successful motion to set aside the 2007 verdict (People v Harris, 55 AD3d 958 [2008]), a 2009 conviction that was reversed on appeal (People v Harris, 19 NY3d 679 [2012]) and a third trial in 2014 that ended with a hung jury. Plaintiff commenced an action in 2014 asserting that the 2007 stock transfer must be set aside as fraudulent and seeking various forms of relief. Supreme Court dismissed that action in 2015 and determined, among other things, that plaintiff's challenge to the [*2]stock transfer was properly one for breach of contract and was time-barred.
Plaintiff was acquitted following a fourth trial in 2016 and, contending that the shareholders' agreement required defendant to return his shares at that point, unsuccessfully demanded that defendant take the necessary steps to do so. Plaintiff then commenced the present action, asserting several causes of action revolving around defendant's alleged breach of the shareholders' agreement in refusing to return the shares. In lieu of serving an answer, defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). Supreme Court determined that the complaint failed to state a cause of action and granted the motion, prompting this appeal by plaintiff.
We reverse. "On a motion to dismiss pursuant to CPLR 3211, we construe the pleadings liberally, accept the allegations in the complaint to be true, give [the] plaintiff[] the benefit of any favorable inferences and 'determine only whether the facts as alleged fit within any cognizable legal theory'" (Maldonado v DiBre, 140 AD3d 1501, 1505 [2016], lv denied 28 NY3d 908 [2016], quoting Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]). Supreme Court held that defendant could not have breached the shareholders' agreement in 2016, as the agreement explicitly terminated when he became the "only . . . remaining [s]hareholder" of the dealerships in 2007. It is true that "[w]hen a contract is terminated, such as by expiration of its own terms, the rights and obligations thereunder cease" (Twitchell v Town of Pittsford, 106 AD2d 903, 904 [1984], affd for reasons stated below 66 NY2d 824 [1985]; see Bessette v Niles, 23 AD3d 996, 997 [2005]). Nevertheless, "the conduct of parties to a contract following its termination may demonstrate that they intended to create an implied contract to be governed by the terms of the expired contract, and whether there was a 'meeting of the minds' required for formation of such an enforceable agreement is generally a question of fact" (Lassiter Props., Inc. v State of New York, 84 AD3d 1559, 1561 [2011], quoting Monahan v Lewis, 51 AD3d 1308, 1309-1310 [2008]; see Richmor Aviation, Inc. v Sportsflight Air, Inc., 82 AD3d 1423, 1424 [2011]). It is undisputed that defendant continued to make monthly payments as required by the shareholders' agreement after the shares were conveyed, and this ongoing compliance with the agreement's terms required further inquiry into "the conduct of the parties to determine whether the terms of the [shareholders' agreement] continue[d] to apply" (Richmor Aviation, Inc. v Sportsflight Air, Inc., 82 AD3d at 1424; see New York Tel. Co. v Jamestown Tel. Corp., 282 NY 365, 371 [1940]; Watts v Columbia Artists Mgt., 188 AD2d 799, 801 [1992]). Supreme Court accordingly erred in concluding, as a matter of law, that defendant could not have breached the terms of the shareholders' agreement due to its termination.
As for whether plaintiff alleged a cognizable breach, in assessing "the obligations of parties to a contract, the threshold determination as to whether an ambiguity exists is a question of law to be resolved by the court" (Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d 1047, 1048 [2014]; accord Adamo v City of Albany, 156 AD3d 1017, 1018 [2017], lv denied ___ NY3d ___ [May 1, 2018]; see Consedine v Portville Cent. School Dist., 12 NY3d 286, 293 [2009]). Ambiguity exists wherever a reasonable difference of opinion may exist to the meaning of the contract language and, if ambiguity exists, a "motion [to dismiss] must be denied to permit the parties to discover and present extrinsic evidence of the parties' intent" (Vectron Intl., Inc. v Corning Oak Holding, Inc., 106 AD3d 1164, 1165 [2013]; see Agor v Board of Educ., Northeastern Clinton Cent. Sch. Dist., 115 AD3d at 1048).
The parties contemporaneously executed several agreements that "must be read together as one" (Nau v Vulcan Rail & Constr. Co., 286 NY 188, 197 [1941]; see Morrissey v Nextel Partners, Inc., 72 AD3d 209, 214 [2010]). A review of the side agreement and the shareholders' [*3]agreement, in particular, raise questions as to the obligations of the parties with regard to the stock transfer and accompanying payments. The side agreement indicated that it, not the shareholders' agreement, controlled until plaintiff was convicted and exhausted "all available appeals." The shareholders' agreement suggests the same, stating that plaintiff's obligation to transfer his shares would only arise once he had been convicted and exhausted "all statutory appeals." These provisions appear to foreclose a stock transfer prior to conviction and the exhaustion of all appeals, raising questions as to whether the transfer that occurred was accomplished pursuant to the terms of the shareholders' agreement.
The stock transfer may, however, have been called for by a footnote in the shareholders' agreement directing defendant to begin making monthly purchase payments to plaintiff within 30 "days after [plaintiff] is incarcerated notwithstanding pending appeals." The footnote further directed that, if plaintiff succeeded on appeal and was eventually acquitted, his shares would be "re-transferred to" him with manufacturer approval and that the payments made to him would be deemed to be his salary. It is not obvious how to reconcile these conflicting provisions and, indeed, defendant contends that the footnote was not part of the shareholders' agreement when he executed it. Discovery is therefore needed to discern the actual provisions of the agreements, the intent of the parties in entering into them and the extent to which they survived after defendant became the sole shareholder in the dealerships.
Defendant's alternative argument for affirmance is that plaintiff failed to obtain the required manufacturer approval prior to demanding the return of his shares. Accepting as true plaintiff's allegation that approval cannot be obtained due to defendant's recalcitrance, however, this case falls within the rule that "a party cannot insist upon performance of a condition precedent when its nonperformance has been caused by the party itself" (Fifty States Mgt. Corp. v Niagara Permanent Sav. & Loan Assn., 58 AD2d 177, 181 [1977]).
McCarthy, J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, motion denied, and matter remitted to the Supreme Court to permit defendant to serve an answer within 20 days of the date of this Court's decision.